## Case No. 13,987.

### THORNDIKE v. UNITED STATES.

[2 Mason, 1.] [1]

Circuit Court, D. Massachusetts. May Term, 1819.

PAYMENT — TENDER — LEGAL TENDER — TREASURY NOTES — INTEREST.

1. Treasury notes issued under Act Cong. 1814. c. 77 [12 Weightman's Laws. 276], and chapter 699 [4 Bior. & D. Laws 737; 3 Stat. 161, c. 17], being by their terms receivable in pay-

ment of duties. taxes. and land debts, due to the United States, for the principal and interest due thereon, are a good tender and may be pleaded as such to such debts.

[Cited in Knox v. Lee, 12 Wall. (79 U. S.) 610.]

2. These treasury notes are on their face payable in one year with interest up to the day when due, but if not then paid by the government the interest does not stop; but continues until paid, and may be required by the holder in the same manner as interest might be claimed on a private contract of a like nature.

[Error to the district court of the United States for the district of Massachusetts.]

At the March term of the district court of the district of Massachusetts, 1819, the district attorney brought an action of debt in the name of the United States, against the plaintiff in error [Israel Thorndike], on a bond given to the collector of the port of Boston, for duties by the plaintiff in error, which bond became payable on the 21st day of November. Upon oyer prayed the bond with the condition was set forth, the condition being in the common form of a bond for duties, "to pay the sum of forty thousand dollars, or the amount of duties to be ascertained as due and arising on certain goods, wares, and merchandizes, entered by the above bounden Israel, as imported in the Beverly, Edes master, from Canton." The memorandum in the margin was, "good for $28,480.03." The defendants then plead "that the United States ought not to recover any damages for the detention of said debt, because they say, that before the time for the payment of said sum of money in said condition mentioned had elapsed, to wit, on the 20th day of November last past, the amount of duties due and arising on the goods, wares and merchandises in said condition mentioned, was ascertained to be the sum of $28,-480.03 and no more, to wit, at," &c.; and they further say. that before the time when the said payment was to be made according to the condition of the said writing obligatory, certain bills or notes, commonly called treasury notes, were issued by authority of a certain act of the United States, entitled "An act to authorize," &c. and of a certain other act of the said congress entitled "An act supplemental," &c. and had been signed in behalf of the United States, by certain persons appointed for that purpose, by the president thereof, which said treasury notes, at the time of the tender hereafter mentioned, were by the laws of the said United States current and receivable in every part of the said United States, in payment of all duties and taxes laid by the authority of the said United States, and were transferable by delivery, and assignment endorsed thereon by the persons, to whose order the same respectively were made payable, and the said Israel, &c. before any default had been made in the payment of the said sum of money in said condition mentioned, to wit, on the said 21st day of November, A. D. 1817, offered to H.

A. S. Dearborn, Esq. who was then and there collector of the customs of the United States, for the district of Boston, and Charlestown, in payment of the said sum so ascertained to be due, and arising for duties, the sum of three dollars and fifteen cents of the money of the United States, and also divers of the said treasury notes before then issued as aforesaid in behalf of the United States, each and every of which said treasury notes contained a promise or engagement in writing on the part of the said United States, to pay the payee therein named or to his order, at Philadelphia, on a certain day therein specified, being one year from the date thereof respectively, the principal sum therein expressed with interest from the date thereof until that day, at $5^2/_5$ per cent. per annum, in conformity with the act of congress of the fourth day of March, A. D. 1814, and which said notes so offered as aforesaid were endorsed and assigned by the several persons, to whose order the same were respectively made payable, and were severally issued and bore date more than one year before the said 21st day of November in the year 1817, and the said Israel, &c. were then and there the lawful owners of the said notes, and by virtue thereof were entitled to demand and receive of and from the said United States for the whole amount of the principal sums therein contained the sum of $24,640, and for the interest which had accrued therein computed from the said several days of issuing the same until the said 21st day of November, A. D. 1817, the further sum of $3,836^{88}/_{100}$ of the lawful money of the said United States, and the said sum of $3^{15}/_{100}$ together with the said treasury notes were then and there of the value of, and by the laws of the said United States, ought to have been received in payment for the said sum of $28,480^3/_{100}$ so due as aforesaid for duties; but the said collector then and there refused to receive the said treasury notes in payment of the said sum, to wit, at, &c.—And the said Israel, &c. further say, that at the time designated on the face of the said notes respectively for the payment of the principal sums therein specified, to wit, at the expiration of one year from the respective times of issuing said notes, the same were presented at the place therein designated for the payment thereof, to wit, at Philadelphia, to the officer designated for that purpose pursuant to the laws of the United States in such case made and provided, who then and there was requested to pay the sums therein severally specified, but the said officer then and there refused so to do.—And they further say, that afterwards and after the said treasury notes had become due and payable according to the tenor thereof, and before the same were so offered in payment to the said collector, to wit, on the 31st day of July, A. D. 1817, the said treasury notes were presented at the said place designated to the said officer designated. and he

was requested to pay the sums specified in the said notes, with the interest, which had thereupon accrued, but the said officer then and there refused to pay the same.—And they further say, that afterwards, to wit, on the 8th day of August in said last mentioned year, the said treasury notes, being then unpaid, were presented to the accounting officers of the treasury of the United States for their examination, who then and there refused to allow the said principal sums and interest thereon accrued, and afterwards, to wit, on the same day and year last aforesaid, the said treasury notes were presented at the treasury of the said United States, to the proper officer of the said United States by law appointed for this purpose, for payment thereof, who then and there refused to allow and pay the said principal sums and interest thereon accrued, to wit, &c. And the said Israel, &c. further say, that they were ready and always from the time of the offer aforesaid until the present time have been ready to pay and deliver the said $3.15 and the said treasury notes to the United States in payment of the said sum so ascertained to be due and arising for duties, according to the form and the condition of said writing obligatory, and they bring the same here into court to be paid and delivered to the said United States in payment and discharge of the said sum, if the said United States will accept the same. Wherefore they pray judgment," &c. To this the district attorney replied—"that the United States ought not to be precluded from having its action, &c. because they say, that all, and singular the bills and notes commonly called treasury notes, which are mentioned and referred to in the plea of the said defendants, and which are therein alleged to have been offered and tendered to the said H. A. S. Dearborn, collector, &c. in payment and satisfaction of the bond aforesaid, were certain treasury notes, which according to the tenor and import thereof respectively were payable at the city of Philadelphia, after the first day of August, A. D. 1815— and that, after the issuing of the said treasury notes and each and every of them, to wit, on the 3d day of March, A. D. 1815, in and by virtue of an act of the congress of the United States, made and passed on the day last mentioned, it was among other things made and provided, that it should be lawful for the secretary of the treasury to cause to be paid the interest upon treasury notes, which had then become due and remained unpaid, as well with respect to the time elapsed before they became due, as with respect to the time that should elapse after they became due, and until funds should be assigned for the payment of the said treasury notes, and notice thereof should be given by the said secretary of the treasury.—And the United States further say, that on 19th day of June, in the year last before mentioned, the funds for the payment of the

said treasury notes were duly assigned in conformity with the act of congress in such case provided; and afterwards, to wit, on the 23d day of the same month of June, due and sufficient notice thereof was given and issued by the said secretary of the treasury according to law,—and that the said treasury notes, which were payable at Philadelphia as aforesaid, would be paid on the application of the holders thereof respectively at the loan office in Philadelphia, on the day or days, on which they should respectively become due, and that interest on the said notes would cease to be payable thereafter; so the said United States say, that on each of the aforesaid treasury notes which were offered and tendered by the said defendants to the said H. A. S. Dearborn, collector as aforesaid, as alleged in the plea, the interest did accordingly cease to accrue at the expiration of one year from the date of the said notes respectively. And the United States further say, that the total amount of all the said treasury notes alleged in the plea of the said defendants, to have been offered and tendered to the said H. A. S. Dearborn, collector, &c. in satisfaction of the obligation aforesaid, computing the interest on said notes at the rate of 5 2-5ths per cent. per annum for the term of one year from the date of the said notes respectively, was the sum of $25,-970.56 and no more—and that by reason of the premises the defendants, as the owners and holders of said notes, were not entitled to demand and receive of and from the said United States, for the interest, which had accrued thereon before the said 21st day of November, A. D. 1817, the sum of $3,836.88 of the lawful money of the United States, and that the said sum of $3.15 together with said treasury notes, were not then and there of the value of, and by the law of the United States, ought not to have been received in payment for the said sum of $28,480.03, being the amount then due on the aforesaid bond for duties in manner and form, as the defendants, in their said plea, have alleged and set forth—and this they are, &c. wherefore." To this replication the defendants demur generally, and the plaintiffs join the demurrer. The judgment of the district court, was entered at March term, 1819, as follows:

"And now at this term came as well the said attorney of the said United States, for the district aforesaid, as the said Thorndike and others by their attornies, whereupon all and singular the premises being seen and by the court here fully understood, and mature deliberation being thereupon had, it appears to the said court here, that the said plea in manner and form aforesaid by the said attorney for the United States, above in reply pleaded, and the matters therein contained, are sufficient in law for the said United States, to have and to maintain their aforesaid action thereof against the said Thorndike, &c. Wherefore the said United States,

ought to recover against the said Thorndike, &c. their said debt together with the damages by them sustained on occasion of the detention thereof. But because the said Thorndike, &c. have prayed the said court here to inquire how much is due to the said plaintiffs according to equity and to render judgment therefor, and it is convenient and necessary, that judgment should not be given hereupon until the said court shall have enquired, and assessed the said sum so due to the said plaintiffs according to equity, according to the statute in such case made and provided, therefore let judgment hereupon be stayed in the meantime, and let the said parties appear before our said court on the 20th day of April, A. D. 1819, that they may be heard in the matter aforesaid, and that the said court may inquire how much is due according to equity to the said plaintiffs, neither of the said parties requesting that the same should be inquired of and assessed by a jury.—At which day come the parties aforesaid by their attornies, and it is shewn to the court here, that the said defendants on the day, when the said sum in the condition of said writing obligatory mentioned became due and payable, according to the form of said condition, did tender and offer to the said collector of the customs, divers treasury notes of the said United States, of the form described in said defendants plea, a schedule of which said notes is hereto subjoined marked 'A,' and also three dollars and fifteen cents in money, which said treasury notes and money, if interest be computed on said notes to the time of said tender, were sufficient to pay and satisfy the whole sum due on said bond, but if interest be computed to such times, as the said collector was willing to allow, viz. one year from the several times of issuing said notes would amount to $2,506.32 less than the sum due and payable according to the condition of said writing obligatory. And thereupon the said Thorndike, at the request and with the consent of said collector, did deposit the said treasury notes so tendered and the said cash, together with certain other like notes, amounting in the whole with interest computed for one year from their respective dates to a greater sum than was due on said writing obligatory, in the office of discount and deposit of the bank of the United States at said Boston, sealed up and subject only to the order and control of the collector, and it was then and there agreed that said defendants should not thereby be precluded from the benefit of a judicial determination by the proper court of the United States, ascertaining to what time interest ought to be computed upon said treasury notes, and that when such determination should be had the said collector should restore to said defendants, such part of said notes, as according to the computation so determined to be just and legal should exceed the amount actually due and owing upon said writing obligatory—and the said treasury

notes, excepting such part as has been brought into this court, are still so deposited and subject to the order of said collector. Wherefore it is considered by the court here, that there is due according to equity, to the said plaintiffs, the sum of $2,509.47, being the difference between the interest upon said treasury notes, tendered and mentioned in the defendants' plea, computed for one year from their respective dates, and interest upon the same notes computed to the time of their being so tendered, and that the said United States do recover against the said defendants the said sum of $2,509.47, and also one cent for their damages, which they have sustained on occasion of the detaining of said debt, &c." The general error was assigned.

Gallison & Prescott, for plaintiff in error, contended: (1) That upon the facts stated in their plea, interest was to be computed on the treasury notes from the time of their date to the time of the actual payment of them. And that therefore at the time of their being tendered, they were, together with three dollars and fifteen cents in cash, also tendered, a complete satisfaction of, and offset to the bond; and that being deposited in a bank under the exclusive control of the collector from that day, the bond must be considered as then paid. (2) They were, at the time of the plea a legal set off to the bond.

1. By the laws authorizing the treasury notes the intent is plain, that they should bear interest until paid. By Act 4th March, 1814 (4 Bior. & D. Laws. p. 649, § 3 [3 Stat. 100]), it is provided, that the said treasury notes shall be reimbursed by the United States, at such places respectively, as may be expressed on the face of said notes, one year respectively after the day on which the same shall have been issued; from which day of issue they shall bear interest, at the rate of $5^2/_5$ per cent. a year, payable to the owner or owners of such notes, at the treasury, or by the commissioners of loans, &c. Section 8 makes them receivable in payment for taxes and duties, and says. "On every such payment, credit shall be given for the amount of both the principal and interest, which, on the day of such payment, may appear due on the note or notes thus given in payment," &c. The act of 26th December, 1814 [3 Stat. 161], refers to the principal act of 4th March. The act of 24th February, 1815 (4 Bior. & D. Laws, 808 [3 Stat. 213]), may afford some light on this question, although none of these notes were issued under it. The 6th section of that act provides that they "shall be every where received in all payments to the United States, and shall be received for the amount of both principal and interest, which on the day of payment may appear due on such as bear interest." The phrase "5 2-5ths per cent, a year" in the first statute shows, that interest was not to be limited to one year, and the expressions

used in providing for the receipt of these notes in payment show, that interest was to be computed up to the very day of offering them in payment. There is no restriction requiring the party to offer them on the day when payable, or before. If it had not been intended to allow interest up to the day when paid, whether before or after they became due, the statute would so have expressed it. But section 9, of the law of 4th March, 1814 (4 Bior. & D. Laws, 650 [3 Stat. 101]), is decisive as to the intention. It is there provided, that every collector, &c. who shall receive any such notes, shall be charged with interest from the time of receiving them to the time of his paying over, and shall be credited interest to the time of paying them to the bank or office of the United States. Suppose the notes paid to a collector at the very expiration of the year, months might elapse before he pays them to the treasury or to the bank. During all this time they carry interest, and the interest is not made to accrue during such time by this section. The object is to provide a mode of settling the account; the interest is spoken of as accruing of course; and this section only provides, how it shall be charged and credited. The same forms of expression are used in the act of 24th February. 1815 (4 Bior. & D. Laws, 809 [3 Stat. 214]), respecting computation of interest (see sections 6, 7), as in the two principal acts—but this last law does not even limit a time for payment. By section 4 the treasury notes may be presented "at any time," and the holder is entitled to certificates of funded stock to the whole amount of principal and interest, computed up to the time of presenting. The argument from this act becomes irresistible, when we find by section 9 all the treasury notes, issued under previous laws, put upon the same footing with those under this law, as to the holders being entitled to certificates of stock. They are to be converted "upon the same terms" and "in the same manner."

2. If we are right in this construction of the intent of the laws, a presumption arises, that the form of the treasury note is such as to execute that intention. And it would be necessary that they should expressly negative the payment of interest, to prevent their bearing interest for such time, as the law has provided. Suppose them silent as to interest, still they would bear interest by the effect of the law. Even if they expressly said, "without interest" this being repugnant to the law would be void, and the other part of the note would stand good, and the law would annex the interest. If not so construed, they must be treated as altogether void, not being pursuant to the law; but they are to be so construed as to have effect if possible, "ut res magis valeat quam pereat." But the form of the note, so far from excluding interest, contains a promise to pay interest according to the law. It is, "with interest from the

date thereof until that day at five and two fifths per centum per annum, in conformity with the act of congress of 4th March, 1814." Had it stopped at "per annum" there would have been no exclusion of interest after the year. But the reference to the statute makes it equivalent to a promise to pay such interest, as the act provides. The words—"until that day" only show an expectation, that they would be paid on the day appointed. It was unnecessary to say any thing as to interest after the day appointed for payment, because from that time interest was due of course.

3. Interest is always an accessary to the debt. Indebitatus assumpsit, and debt lies for interest alone. Herries v. Jamieson, 5 Term R. 556; Cooley v. Rose, 3 Mass. 221; Greenleaf v. Kellogg, 2 Mass. 568. Interest is not given as damages, though in assumpsit the form of the action requires, that it should be included under that name, as well as the principal sum. And in debt a technical rule makes it necessary to comprehend the interest in the damages for detention, but in truth the interest is an accessary to the debt. Hence it is always computed by the court, when necessary, without a reference to the jury. When there is any interval between the verdict and judgment, interest is carried down to the time of the judgment, without a new inquiry by the jury, unless the plaintiff himself occasions the delay. This was done in Robinson v. Bland, 2 Burrows, 1087. In that case Lord Mansfield was glad of an opportunity to correct a practice, which had prevailed, of allowing interest only to the commencement of the action. This mistake he thinks arose from not distinguishing between assumpsit for money, and common actions of trespass. He says (page 1087): "Where a man brings an action of assumpsit for principal and interest, upon a contract obliging the defendant to pay such principal money with interest for such a time, he complains of the nonpayment of both, the interest is an accessary to the principal." "In chancery, interest is computed even up to the day, when it is conjectured or agreed, that the master's report will be confirmed, though a future day." I don't know of any court in any country (and I have looked into the matter) which does not carry interest down to the time of the last act by which the sum is liquidated. In page 1086, he says, although this be nominally an action for damages, and damages be nominally recovered in it; yet it is really and effectually brought for a specific performance of the contract, for where money is made payable by an agreement between parties, and a time given for the payment of it, this is a contract to pay the money at the given time, and to pay interest for it from the given day, in case of failure of payment at that day. So that the action is in effect brought to obtain a specific performance of this contract. For pecuniary damages upon a contract for payment of money are, from the nature of the thing, a "specific performance."

Interest is sometimes made the measure of damages, as in Bodily v. Bellamy, 2 Burrows, 1097, but it is not recovered as damages. So interest is often given in shape of costs. Id., and 2 Term R. 78. Interest is computed in the exchequer chamber upon affirming a judgment in error, up to the time of affirmance. And on scire facias against the bail in error, it is allowed and computed by the master, from the time of affirmance in the exchequer chamber. Welford v. Davidson, 4 Burrows, 2123. In Blaney v. Hendricks, 2 W. Bl. 761: "Interest is due on all liquidated sums from the instant the principal becomes due and payable." In this case, the strictly legal effect of the promise perhaps is, that on the day designated for payment, the principal and interest then coming due began to carry interest jointly, precisely as if the promise had been to pay on that day a sum equal to the principal and the interest for one year. Until 37 Hen. VIII., c. 9, all interest was illegal. That statute allowed interest at 10 per cent. See the act and Lowe v. Waller, Doug. 740. In U. S. v. Gurney, 4 Cranch [8 U. S.] 345, Chief Justice Marshall says: "The majority of the court is not satisfied, that in waiving those damages, the obligee has without any agreement on the subject relinquished that right to interest, which is attached to all contracts for the payment of money;" and the court ordered judgment for the sum with interest from the time, when it should have been paid. In Farquhar v. Morris, 7 Term R. 124, bond with penalty for payment of a less sum, and no day fixed and nothing said as to interest. Held, that it was payable on the day of the date; and that interest was payable from that time, though not expressly reserved and though no request proved. In Marshall v. Poole, 13 East. 98. Where goods were sold, to be paid for in bills at two months, and no bills were given—held, that interest was recoverable upon a count for goods sold and delivered from the time the bills would have been due, and Lord Eldon says: "Interest may be considered in this case as parcel of the price of the goods sold and delivered; if they had been paid for at the time of delivery the price would have been as much less." In Trelawney v. Thomas. 1 H. Bl. 303. Interest for money paid to the use of another is to be computed, the amount being liquidated. In Young v. Leven, 4 Dow, 143. Where a collector of excise suffered the duties to be in arrear, and claimed and received interest of the debtor, it was held that the interest could not be recovered back by the party paying it; for, says Lord Eldon, if the duties were not paid at the time they were payable, and interest was charged, whether that interest belonged to the officer or to the public as issuing from the corpus of that fund, which belonged to the public, the trader had no reason to complain. In mons-

trans de droit against the king, if there be judgment for plaintiff there also shall be judgment for the mesne issues and profits. Com. Dig. D. 82.

Mr. Blake, Dist. Atty.

The question is, whether interest shall be computed on the treasury notes so as to be made a subject of tender, after the notes became payable up to the time of tender. Firstly, it may safely be admitted, in the outset, that in equity this claim of interest is well founded, and might be recovered if the United States were suable, or by petition of right, or monstrans de droit, but the objections are, 1st, that extra interest cannot be subject matter of tender. 2d. That it is not good in the way of set off.

1st. As to tender. Was the collector bound to receive these notes with allowance of interest as claimed; and is the action barred by his refusal. This depends on the construction of the laws of the United States, relative to this subject. This debt is on bond for payment of duties, as to which, by Act March, 1799, § 74 [1 Stat. 680], nothing is receivable but "money of the United States" or "foreign gold and silver coins at certain rates." Nothing else can be tendered in satisfaction. Six per cent. stock part due, could not be tendered. Suppose treasury notes, "the United States promise to pay A. B. or bearer" and nothing said about their being receivable for taxes, &c. they clearly could not be received. The question then is, whether upon the construction of the several acts enacting this species of paper, it is made receivable for duties, with accruing interest? On this point, whatever may be the words of the statute, the intention of congress is clear. No government could anticipate inability to fulfil its engagements. All financial operations proceed on the ground of exact punctuality. Failure is national bankruptcy. But what is the construction to be put upon the acts of congress relating to this subject? And what is the import of the promise on the face of these notes? All the acts preceding that of March, 1815, clearly contemplate payment of the notes at the expiration of one year from their date, and such also is the tenor of the notes themselves. But in March, 1815, some notes had already laid over, and the secretary of the treasury was authorized to continue the interest on them. This shows the sense of congress that no such authority previously existed. He is, however, authorized to allow interest sub modo only, until funds are assigned and notice given. Here such funds were assigned, and notice given. And the interest therefore ceased; such was the secretary's construction, and such the fact. But suppose the secretary had been authorized to continue the interest on these notes; does it thence follow that the interest can be allowed by the collector in payment of duties, without, at least, instructions from the secretary; clearly not. Suppose the secretary had been authorized to redeem Mississippi stock; or the Louisiana debt, as he has been the three millions on the next October. Yet this would not be receivable for duties and could not be tendered. So of old continental money or any other demand upon the United States. Besides, these treasury notes were made payable at Philadelphia, and the duties were payable at Boston: the place at which payments are to be made is important in fiscal arrangements. Another difficulty is to determine the rate of interest. Is it to be computed at 5⅔ per cent. or at 6 per cent. according to the legal rate in Massachusetts, or at 7, according to that of New York? There is no legal rate of interest, established by the United States. Suppose there was a failure on the part of the United States, to redeem a portion of the three per cent. stock, interest afterwards should not be confined to the 3 per cent. for the detention of the money is worth 6 per cent. at least. But it is said that interest is accessary to the principal, and follows as a matter of course, and that debt, assumpsit, &c. lies to recover it; and 5 term R. 556; 6 Mass. 262; 2 Burrows, 1087; 1 Term R. 343,—are cited. But all three proceed on the ground of an implied promise in the case of individuals. There is no such implication, where the sovereign is a party. All the contracts of government are express.

2d. Can the defendant avail himself of this claim by way of set off? The objections to this are (1) That the plea in this case is a plea of tender and not of set off. (2) Off set is unknown at common law. (3) The statute of 6 Geo. I., c. 2, is not binding here. (4) This act confines set off to goods sold or services rendered. (5) Our statute of 1784, c. 28, § 12, is confined to actions brought on book account stated, quantum meruit, quantum valebant, or services rendered. In this state the account must be filed seven days in the clerk's office. Besides, the claim to be set off must be an original one, not derived from assignment, transfer, &c. See Holland v. Makepeace, 8 Mass. 421; Makepeace v. Coates, Id. 451. Set off must be of debts certain. As bond, covenant, assumpsit, but not case when the damages are uncertain. Uncertain demands are refused in off set. See Winchester v. Hackley, 2 Cranch [6 U. S.] 342. This is only a claim of uncertain damages for the detention of a debt.

Mr. Prescott, in reply, was stopped by the court.

STORY, Circuit Justice. The replication of the United States is clearly bad for several reasons. In the first place it relies upon an act of congress (Act March 3, 1815, c. 768; 4 Bior. & D. Laws. Ed. 1816, 831 [3 Stat. 227, c. 87]) as justifying a stoppage of interest

upon the treasury notes tendered in payment of this bond, which is wholly inapplicable. That act is confined to treasury notes, which had already become due and remained unpaid; and the replication itself avers, that the treasury notes now in question were not due until after the first day of the succeeding August. In the next place, if we could surmount this difficulty, the replication would still be bad, because it neither traverses, nor avoids the matter alleged in the plea. If funds were assigned for the payment of these treasury notes, and yet the proper officers of the government refused to pay them out of these funds, there is no pretence to say, that such an assignment, with a refusal of payment, was within the purview of the act, or that it is a legal answer to the matter of the plea. We are therefore driven to consider the sufficiency of the plea itself, which in truth covers the whole controversy between the parties, and involves matter of law of no inconsiderable importance. By the statutes of the United States (Act March 4, 1814, c. 77 [12 Weightman's Laws 276]; 4 Bior & D. Laws, p. 649, § 8 [3 Stat. 101, c. 18]; Act Dec. 26, 1814, c. 699; 4 Bior. & D. Laws, p. 737, § 3 [3 Stat. 162, c. 17]), under which treasury notes have from time to time been issued, it is enacted, that all such notes shall be receivable in payments to the United States for duties, taxes and sales of public lands, to the full amount of the principal and interest, accruing due on such notes. It follows of course, that they are a legal tender in payment of debts of this nature due to the United States, and by the very tenor of the acts, public officers are bound to receive them.

The single question, therefore, presented for the consideration of the court is, up to what time interest is to be calculated upon the treasury notes stated in the plea. If up to the time of the tender, then the plea is a good bar; if otherwise, then judgment must pass for the United States. The district attorney contends, that no interest is allowable beyond the times at which the notes respectively became due; on the other hand, the original defendants contend, that interest is to be allowed up to the time of the tender, the United States having refused to pay them at the time, when they became due, and at all subsequent times. All these treasury notes contain on their face a promise by the United States to pay the principal in one year from their date, with interest from that time, at the rate of $5^2/_5$ per cent. per annum, until that day; and the argument is, that as no interest is stipulated for beyond that day, none can grow due upon the contract. But the consequence does not follow from the premises; for the law upon every such contract between private citizens implies, that if the money is not paid at the day, the party shall pay interest for the delay of payment. Robinson v. Bland, 2 Bur-

rows, 1077, 1086. Lord Mansfield has laid down this doctrine in very emphatic terms. He says, "where money is made payable by an agreement between parties, and a time given for the payment of it, this is a contract to pay the money at the given time, and to pay interest from the given day, in case of failure of payment at that day." Robinson v. Bland, 2 Burrows, 1077, 1086. And we all know, that it is a uniform rule of courts of law, upon all contracts for payment of money at a stipulated time, to allow interest upon non-payment at the day, as a right, which is attached to all such contracts, when they are silent as to interest. Farquhar v. Morris, 7 Term R. 124; Marshall v. Poole, 13 East, 98; Clark v. Barlow, 4 Johns. 183. And the rule has been enforced by the supreme court in a case where the United States were a party to the contract, and sought the benefit of the rule. U. S. v. Gurney, 4 Cranch [8 U. S.] 345. Nor can it make any difference, that the contract contains an express stipulation for interest until the day fixed for payment; for that is not inconsistent with the implication, that if not paid at the day, interest is to be paid afterwards, since without such express stipulation no interest would grow due until a default of payment. The maxim then, expressum facit cessare tacitum, does not apply; for the contract does not speak to the particular case.

If the present then were a contract between private citizens, there can be no doubt, that the court would be bound to give interest upon the contract up to the time of payment. And if by law the amount due on the contract could be pleaded as a tender or a set off to a private debt, it would be a good bar to the full extent of the principal and interest due at the time of such tender or set off. Nay more, if the note or promise were given by a citizen to the government, the latter might enforce its claim to the like extent. Can it make any difference in the construction of the contract, that the government is the debtor instead of the creditor? In reason, in justice, in equity, it ought to make none; and there is not a scintilla of law to justify any. And if a suit could be maintained against the government, I do not perceive, why it would not be as much the duty of the court to render judgment on such suit for the principal and interest, in the same manner and to the same extent as it would in the case of private citizens. The United States have no prerogative to claim one law upon their own contracts, as creditors, and another as debtors. If, as creditors, they are entitled to interest, as debtors, they are bound also to pay it. Nor is there the slightest pretence to assert that the acts, under which these treasury notes were issued, prohibit the payment of interest after a year from their respective dates. They authorize the issuing of treasury notes in the exact terms, in which the present are

couched. The most that can be urged is, that the acts are silent as to the payment of interest after the year; but in such cases the law steps in and by implication supplies, as matter of necessary inference, what is not expressly declared.

· But it is not necessary to rest this construction upon the general principles of law, strong and unexceptionable as that ground appears to the court. There are clauses in the statutes cited at the bar, which manifestly contemplate that interest is due after the year, whenever treasury notes are then outstanding and unpaid. The collectors of the revenue, who are bound to receive the notes in payment of public debts as well after as before the expiration of the year, are in all cases chargeable with interest from the receipt until payment of the notes into the treasury. Act 4th March, 1814, c. 77, § 7 [12 Weightman's Laws, 277; 3 Stat. 101, c. 18]. Yet why should this be done on payments after the expiration of the year, if interest by the terms of the contract had then ceased? The very clause in the statute of 1815 (Act 3d March, 1815, c. 768, § 7 [4 Bior. & D. Laws, 833; 3 Stat. 228, c. 87]) which has been relied upon by the government, does seem to me to justify the same construction. It authorizes the secretary of the treasury to pay the interest upon treasury notes then due and unpaid, as well with respect to the time elapsed before as after they became due, until funds shall be assigned for their payment. Why should interest, eo nomine be paid upon such notes, after they became due, if the legislature did not clearly comprehend, that the faith of the government was pledged to that extent? The statute does not purport to make a new allowance, but simply to authorize a payment of an existing debt or duty

It has been asked, whether upon all contracts of the government, · which are not strictly performed according to their terms, interest is to be allowed in the same manner as upon private contracts? In point of justice or law no reason is perceived by the court, why the government, if it were suable, ought not to pay, what as a creditor it could compel its own debtor to pay. But we may leave this case to be decided, when it shall arise. Here the government have expressly stipulated for interest at a specific rate; the contract is received by the citizens upon the public faith; and that rate of interest becomes as between the government and the citizens the law of the contract, until it is paid. If a different measure of compensation could be dealt out by judicial tribunals, in my judgment it would seem as little to comport with the dignity of the government, as it does with sound policy and the eternal dictates of justice.

· The judgment of the district court is reversed, and a judgment must be entered, that the plea in bar is good, and that the United States take nothing by their writ.