HOLMES *et al.* v. THE BOARD OF TRADE OF KANSAS CITY, *Appellant.*

1. **Corporation**: CONTRACT OF SERVICE. No formal resolution of the board of directors of a corporation is prerequisite to the employment of counsel, and a contract for legal service may be made by the tacit or implied consent of the board of directors. A director, with the knowledge of the board, and independently of his duties as director, may act as the agent of the corporation, and it will be bound by his acts.

2. ———: ———: AGENT: RATIFICATION. Where a person is employed for a corporation, by one assuming to act in its behalf, and renders service according to agreement, with the knowledge of its officers and without notice that the contract is not recognized, as valid and binding, such corporation will be held to have sanctioned and ratified the contract, and be compelled to pay for the service.

3. **Contract**: AGENT: NOTICE. Where it is sought to hold a party liable for services which were not performed by previous request, and which might properly have been provided and paid for by another, it ought to be made to appear that he permitted the services to be rendered without objection, knowing that they were procured to be rendered by one acting as his agent, or having good reason to believe that the person rendering them relied upon him for compensation.

*Appeal from Jackson Special Law and Equity Court.*—HON. R. E. COWAN, Judge.

REVERSED.

*Gage, Ladd & Small* for appellant.

There was no acceptance or use of respondents' **work,**

within any reasonable import of those words. Respondents were not acting in the interest of the board of trade. They were acting for Mr. Alexander. But even if the acceptance and use, mentioned in the first declaration, constitute one element of ratification, its indispensable accompaniment, full knowledge of all the material facts, is wholly wanting. Ratification may be by words spoken or written, or an act done by the party sought to be charged, but in either case the party must have full knowledge of all the material facts. *Cravens v. Gillilan*, 63 Mo. 28; *Middleton v. Railroad Co.*, 62 Mo. 581; *Watson v. Bigelow*, 47 Mo. 413; *Owings v. Hull*, 9 Peters 629; *Risley v. Railroad Co.*, 1 Hun 207. The cases in which it is held that if the principal ratifies and enjoys the benefit of a part of the contract, he cannot repudiate the rest, refer to an intentional ratification with knowledge of all that has been done. *Baldwin v. Burrows*, 47 N. Y. 215; *Smith v. Tracy*, 39 N. Y. 79; *Nixon v. Palmer*, 4 Seld. 401; *Seymour v. Wyckoff*, 6 Seld. 224.

*Tichenor & Warner* for respondent.

A contract may be made by the tacit or implied consent of the board of directors. R. S. 1879, § 731; *Chouteau v. Allen*, 70 Mo. 325; *Bank v. Dandridge*, 12 Wheat. 83; *Dunn v. Rector, etc.*, 14 John. 118; *College v. Township*, 13 Ia. 561; Story on Agency, §§ 52, 53. One may be a director, and yet independently of his duties as such, act as the agent of the corporation; if he does so with knowledge of the board, it is bound by his acts in the course of the business conducted by him. *Goodwin v. Union S. Co.*, 34 N. H. 378; *Hoyt v. Thompson*, 19 N. Y. 215; *Hayward v. The Pilgrim*, 21 Pick. 277; *Fister v. LaRue*, 15 Barb. 324; *Emmett v. Reed*, 4 Seld. 312; *Scott v. Railroad Co.*, 86 N. Y. 200; *Abbott v. Herman*, 7 Greenl. 119; *Beidman v. Goodell*, 56 Ia. 592; Angell & Ames on Corp., § 284. In order to bind the corporation no formal vote or resolution of the corporation need be shown. *Bank v. Fricke*, 75 Mo. 184.

A part of the transaction of the one acting as agent, cannot be adopted and the rest repudiated. The act must be taken *cum onere*. *Hovil v. Park*, 7 East 164; *Ferguson v. Carrington*, 9 B. & C. 59; Story on Agency, § 250. A treasurer of a railroad may employ an attorney for his company. *Turner v. Railroad Co.*, 51 Mo. 505; *Western Bank n. Gilstrap*, 45 Mo. 421; Story on Agency, § 253.

Hough, C. J.—This is a suit for fees for professional services, alleged to have been rendered by the plaintiffs, as attorneys at law, for the defendant.

It appears from the record that the defendant, being engaged in the erection of a building for its use, found it necessary to effect a loan of $25,000. At a meeting of the board of directors of the defendant, the treasurer, who had been instructed to open negotiations for said loan, reported that it could be obtained from a bank in Massachusetts. Thereupon, A. L. Mason, one of said board, stated that " he would like to take the loan of $20,000 or $25,000 without any commission, no expense to the board." It afterward appeared that Mason was acting for one Ross Alexander, a relative, who lived in Illinois. Mr. Karnes was the regular attorney of the defendant. The proffered loan having been accepted, Mason went to the plaintiffs, who were his attorneys, and said to them that he was proposing on behalf of Mr. Alexander, to loan to the defendant $25,000 on bonds and mortgage, and wished plaintiffs to examine as to the authority of the defendant to borrow money, and to see that the security was put in such shape as to be valid. He then told them he did not wish from them a certificate as to the title of the defendant to the property, as he understood Karnes & Ess had examined it and found it good, but requested them to inquire of Karnes & Ess if they had passed upon the title. He told the plaintiffs to send their bill to the board of trade. He also stated that if the board did not pay the bill he would. The plaintiffs were of opinion that, in order to make the security valid, it must be

authorized by the stockholders at a meeting to be held upon sixty days' notice. After consultation and discussion with Mr. Karnes, appellant's attorney, and some of its directors, it was finally agreed that the notice should be given and the meeting held. The notice for the meeting was prepared by one of the plaintiffs, and he urged upon the members of the board the necessity of having a majority of the stockholders present at the meeting.

The testimony leaves it in doubt whether the plaintiffs, or Mr. Karnes, prepared the resolution to be adopted by the stockholders. Mr. Holmes and Mr. Karnes both attended the meeting and explained the resolution to the stockholders, and it was adopted. Thereafter the secretary of the board directed Mr. Karnes to prepare the form of the bonds, but Mr. Karnes suggested that, as they had to pass the inspection of Mr. Dean, one of the plaintiffs, " he had better draw the form to suit himself, and then there would be no question of their satisfying him." Mr. Dean did prepare the form. The deed of trust was also drawn by the plaintiffs. Plaintiffs had the bonds lithographed, as directed by Mason, and had the notice for the stockholders' meeting published, and the defendant paid the lithographers and printers bills. After the bonds were issued and the mortgage was executed and the money obtained, the plaintiffs sent their bill to the defendant. The board of directors refused to pay it, and the secretary so advised the plaintiffs by letter. This letter was sent by the plaintiffs to Mr. Mason. Mr. Dean also spoke to Mr. Karnes about it. The situation was embarrassing to the latter, and he spoke to several members of the board, requesting them to avoid difficulty if possible.

At a second meeting of defendant's board of directors, Mr. Mason was present and made a personal appeal regarding the matter; and upon that the board directed the secretary to offer the plaintiffs $50 as a compromise, which he did, but which was declined. At this meeting any liability on the part of defendant was denied. Karnes testi-

fied that he supposed he represented the defendants in the transaction, and charged for it accordingly; and that he supposed the plaintiffs represented the lender of the money. Nofsinger, the president, Holden, the treasurer, and Miller, the secretary of appellant, all testified that the presentation of a bill by the plaintiffs was a surprise; they supposed they were represented by Mr. Karnes, and that the plaintiffs were caring for an adverse interest.

There was some testimony as to the custom in regard to the payment of expenses attending loans, but it was conflicting and unimportant. The cause was tried by the court, without the aid of a jury. The following declarations of law were given, at the request of the plaintiffs:

1. The court sitting as a jury, declares the law to be, that, although the defendant may never have authorized their director, Mason, to employ the plaintiffs, yet, if he did employ them, and, under his direction, they performed work which was afterward accepted and used by defendant, that such action by it, amounted to a ratification of such employment by said Mason, and for which defendant must pay a reasonable compensation.

2. The court declares the law to be, that if defendant employed plaintiffs to perform the services sued for, or if they were employed by a director of defendant, who had no authority to so employ, yet if his acts were afterwards ratified by defendant, then plaintiffs must recover.

At the instance of the defendant, the following were given:

2. The circumstance that A. L. Mason was a member of defendant's board of directors did not authorize him to make a contract with plaintiff, which should bind the defendant.

4. The fact that the defendant's managing officers knew that the plaintiffs were performing services in relation to the loan made by the defendant, and that they conferred with them in regard to the matter, does not render the defendant liable to pay for such services, unless such manag-

ing officers knew at the time such services were being rendered, that plaintiffs expected the defendant to pay for the same, or that Mason had agreed that it should.

5. Unless the court believes from the evidence, that at the time the loan in question was negotiated, a custom existed in Kansas City for the borrower of money to pay all the expenses of the negotiation, including compensation for all legal advice and services which might be deemed necessary by the lender, and that such custom was uniform, and not varying, general and known to the parties—then the defendant cannot be supposed to have negotiated the loan with reference to any custom in regard to the payment of the lender's attorney's fees.

Judgment was rendered for the plaintiffs for $150.

The principles of law asserted in the brief of counsel for the plaintiffs, are undoubtedly correct. No formal resolution of the board of directors was prerequisite to the employment of counsel. A contract for legal service may be made by the tacit or implied consent of the board of directors; and in many instances, contracts for legal services have been upheld when made by the managing officers of a corporation, without any previous authority from the board of directors. *Western Bank v. Gilstrap*, 45 Mo. 419; *Southgate v. A. & P. R. R. Co.*, 61 Mo. 89; *Turner v. R. R. Co.*, 51 Mo. 505; *American Ins. Co. v. Oakley*, 9 Paige 496; *Thompson v. School Dist.*, 71 Mo. 495.

It is, also, true that a director may, with the knowledge of the board, and independently of his duties as director, act as the agent of the corporation, and it will be bound by his acts, in the course of the business conducted by him. *Goodwin v. Union S. Co.*, 34 N. H. 378.

And it must likewise be conceded, as argued by plaintiffs' counsel, and decided in *Fister v. LaRue*, 15 Barb. 324, that, "Where a person is employed for a corporation by one assuming to act in its behalf, and goes on and renders the services according to the agreement, with the knowledge of its officers, and without notice that the contract is not recog-

nized, *vide* copy and report, as valid and binding, such corporation will be held to have sanctioned and ratified the contract, and be compelled to pay for the services according to the agreement. Having availed itself of the services and received the benefits, it is bound in conscience to pay, and will not be heard to say the original agreement was not made by a person legally authorized to contract."

In such case the corporation becomes liable on the ground of ratification. It is to be observed, however, that the decision in the case last cited, proceeds upon the assumption that the officers of the corporation permitted the person employed to render the services charged for, with knowledge of the fact that such person had been employed for the corporation. This principle was correctly and properly announced in the fourth declaration of law given for the defendant, but was strangely ignored in the first declaration of law given for the plaintiffs. This latter declaration asserts the proposition, that the acceptance and use by the defendant of the work performed by the plaintiffs, will alone suffice to render the defendant liable to the plaintiffs for the value thereof. Under this declaration of law the defendant would be held liable, although it never authorized the employment of the plaintiffs, and had no knowledge that Mason had assumed to employ them on its behalf, and the finding of the court may have been based upon this declaration of law.

This case is unlike that of *Scott v. Railroad Co.*, 86 N. Y. 200, cited by plaintiffs' counsel. There it was held that where a railroad corporation received railroad iron, bought upon its credit and for its use by one of its officers, without authority, and used it in laying the track of the company, such use amounted to an adoption and ratification of the act of the officer; and the directors using the material, so purchased, were bound to inquire, and were presumed to know, whether it was paid for or not. But while the court held that in that case it was not necessary that the company should know the terms of the contract, yet it

is fairly deducible from the opinion that it was essential that it should appear that the company knew, or had reason to believe, that the iron was purchased on its credit. The principle here announced could very properly have been applied to the lithographing and printing of the bonds and the publication of the notice, if the defendant had accepted the benefit of that work and refused to pay for it. In the absence of a contract to the contrary, the defendant was, of course, bound to furnish its own bonds, and to pay for notices of its own meetings. But the devising of the form of bonds, and the preparation of the trust deed, and an examination into the authority of the defendant to make and secure a loan, stand, we think, upon a different footing. These are matters which were as much for the benefit of the party loaning the money, as for the party borrowing, and could, with propriety, have been provided and paid for by either; and when a party is sought to be held liable for such services, which have not been rendered upon previous request, as is the case here, it certainly ought to be made to appear that the party to be charged permitted the party rendering the services to go on, without objection, knowing that such party had been employed by one assuming to act as its agent, or having good reason to believe that such party relied upon it for compensation therefor. It is unnecessary for us to determine, as the case now stands, whether there is any testimony which will fairly warrant an inference that the defendant had such knowledge, or reasonable ground of belief.

The law not having been correctly declared, we reverse the judgment and remand the cause. All the judges concur.