PETER IMLER, Respondent, v. CITY OF SPRINGFIELD, <span>30 669<br>89 653</span><br>Appellant.

St. Louis Court of Appeals, May 8, 1888.

1. PRACTICE, APPELLATE.—Where damages are assessed to a property-owner for changing the grade of a street, under an act approved March 26, 1885, providing for the payment of damages by municipal corporations for private property taken for public use, and it is conceded by the corporation that the sum adjudged is not too large, the judgment will not be reversed because the record fails to show that proper notice was given of the condemnation proceedings.

2. RATIFICATION EQUIVALENT TO PREVIOUS DIRECTION.—If a street grade be established and constructed without authority of a previous ordinance, as required by law, but be afterwards ratified and adopted by the city council, this is sufficient to bring the claim for damages within the provisions of the act of March 26, 1885, and does not involve a right of action for negligence of the city's officers and servants in the performance of a public duty. Nor will a technical informality or omission in the proceedings affect the establishing or changing of the grade, within the meaning of the law, if the act was done or ratified by the city authorities empowered to perform such public service.

APPEAL from the Greene Circuit Court, HON. W D. HUBBARD, Judge.

*Affirmed.*

R. L. GOODE, for the appellant: The power to establish the grade of a street and to raise or lower it after it has once been established is vested in the city council and can only be done by a duly enacted ordinance. Rev. Stat., secs. 485, 487. If the grade be raised or lowered by city officers, agents or servants or any one else without the authority of an ordinance it is not the act of the city and the city is not liable for damages caused thereby. Dill. Mun. Corp., secs. 60, 618; Cooley Const. Lim., side p. 204, top p. 248; *City v. Clemens*, 53 Mo. 403; *Hoyle v. Mallinckrodt*, 46 Mo. 365; *Thompson v.*

*Boonville*, 61 Mo. 283 ; *Matthews v. Alexandria*, 68 Mo. 115 ; *Boon v. Utica*, 2 Barb. 104 ; *Fulton v. Lincoln*, 2 N. W. Rep. 674 ; *Saxton v. Beach*, 50 Mo. 489 ; *Irvin v. Devors*, 65 Mo. 625 ; *Stewart v. Clinton*, 76 Mo. 604 ; *Witter v. Cavander*, 3 Mo. App. 580 ; *Perkinson v. St. Louis*, 4 Mo. App. 322 ; *Stifel v. Dougherty*, 6 Mo. App. 441 ; *Werth v. Springfield*, 78 Mo. 107 ; s. c., 22 Mo. App. 13. In the case at bar the surface of the street was not only raised without the authority of an ordinance but directly in contravention of an ordinance. The ordinance which prescribed the specifications for curbing and guttering, number five hundred and twenty-eight, expressly provided that the top of the curbing should be set on the true grade of the street and number five hundred and eight provided that the street should be brought to its established grade before the curbing and guttering were done. The bill of exceptions concedes that ordinance number five hundred and twenty-eight constituted the specifications according to which the contractors were to do the work. If the street's grade was raised then it was raised against the city's command and in no case could it be held liable therefor. *Sheehan v. Gleason*, 46 Mo. 100. The act of March 26, 1865, entitled "an act to provide for the ascertainment of and payment for damages done by municipal corporations to private property for public use, as directed by section twenty-one, of article two, of the state constitution," is not applicable to this case. Both the constitutional provision and the act enforcing it, contemplate only those cases wherein the work ordered by the municipality must necessarily damage private property, even if lawfully and skillfully done. *Werth v. City*, 78 Mo. 107. There is no evidence to show that the defendant was notified when and where the commission would meet to assess damages. No proof of publication, as required by the said act of March 26, 1885, was made. The doctrine of subsequent ratification cannot be invoked to make the defendant liable. The act of 1885, under which the plaintiff has proceeded, applied

only to those cases where the work, as ordered and provided, is bound to injure a person's property, and in which the damage for the injury may be as well assessed before the work is done as afterwards. In this case the work which caused the damage to plaintiff, to-wit, the raising of Boonville street, was done unlawfully and improperly by the persons who did it, and if the city became in any way liable by paying for the work or ratifying their act in any other manner, it only became liable as they were, viz., in an action for negligently and improperly filling in the street. The defendant is not liable to have damages assessed against it by commissioners for raising the street because it ratified the illegal acts of its servants, unless those servants would have been liable to have damages assessed against them by commissioners if the city had not ratified their acts.

JAMES R. VAUGHAN, for the respondent: Municipal corporations are in all cases liable in damages where property is taken or damaged for public use. Mo. Const., art. 2, sec. 21 ; Session Acts, 1885, p. 47 ; *Dooley v. Kansas City*, 82 Mo. 440 ; *Hunt v. Boonville*, 65 Mo. 620 ; *Worley v. Columbia*, 88 Mo. 106 ; *Harmon v. Omaha*, 17 Neb. 548. The work was all done by the agents and authorities of the city, and if not done as ordered or provided for by the city in the first instance it was fully ratified by the city. A municipal corporation, like any other, can ratify the acts of its agents. 1 Dill. on Mun. Corp. [2 Ed.] sec. 385, *et seq. ; Holmes v. Board of Trade*, 81 Mo. 140 ; *Barrett v. County Court*, 44 Mo. 198 ; *Schumaker v. City*, 3 Mo. App. 297. At the trial, as shown by the bill of exceptions, it was conceded that the damages were not too large in the event plaintiff was entitled to recover any damages in this action. This waived all question as to the publication of any notice as required by the act of 1885. It does not lie in the mouth of the city to say that a wrong has been done by us, and we have the benefit of it, but as

we have not done it according to the law of our creation and government, you cannot help yourself, and are remediless. *Union Depot Co. v. St. Louis*, 8 Mo. App. 412; *Carondelet v. St. Louis*, 29 Mo. 527; *Union Depot Co. v. St. Louis*, 76 Mo. 393.

THOMPSON, J., delivered the opinion of the court.

The constitution of this state (art. 2, sec. 21) provides as follows: "Private property shall not be taken or damaged for public use without just compensation. Such compensation shall be ascertained by a jury or board of commissioners of not less than three freeholders, in such manner as may be prescribed by law."

On the twenty-sixth of March, 1885, the legislature passed "an act to provide for the ascertainment of and payment for damages done by municipal corporations to private property for public use, as directed by section twenty-one of article two, of the state constitution." Laws of 1885, p. 47. The first section of this statute enacts as follows:

"That in all cases where the proper authorities in any city in this state have graded or regraded, or may hereafter grade or change the grade, or lines, of any street or alley, or in any way alter or enlarge the same, or construct any public improvement, thereby causing damage to private property for public use within the meaning of section twenty-one, of article two, of the state constitution, without the consent of the owner of such property; or in case they fail to agree with the owner thereof for the proper compensation for the damages so done, or likely to be done, or sustained, by reason thereof; or by reason of the legal incapacity of such owner, no such compensation can be agreed upon,—the circuit court having jurisdiction over the territory embraced in such city, or any judge thereof in vacation, on application thereto by petition, either by the city authorities or the owner of the property for which damage is claimed, or any one on behalf of either, shall

appoint three disinterested freeholders of such city, who shall meet upon the premises at a time by them to be appointed, of which they shall give personal notice to the owners, or their agents, of the land affected, if they can be found, as well as five days' notice by advertisement in the newspaper doing the city printing ; and the said commissioners, having been first duly sworn to perform their duties justly and impartially and a true report to make, shall view the said street, or alley, or improvement, and premises affected by the change, or enlargement, or construction thereof, having due regard to and making just allowances for the advantages which may have resulted, or which may seem likely to result to the owner or owners of property for which damages may be allowed or claimed, and after such comparison, shall estimate and determine whether any, and if any, how much, damage such property may have sustained or seems likely to sustain by reason thereof, and make report of the same at the existing or following term of the court, and if no exceptions be filed within ten days thereafter, or in the event exceptions are filed and overruled, the court shall confirm the report and enter judgment thereon with costs, including three dollars per day to each commissioner, from which judgment either or any party shall be entitled to an appeal or writ of error, as in other cases."

The eighth section enacts as follows : "The above proceedings shall be exclusive of all other remedies in the courts of this state for the recovery from any municipal corporation of damages done to private property for public use within the meaning of section twenty-one of article two of the state constitution."

This is a proceeding under the above statute to assess the damages alleged to have been sustained by the plaintiff by changing the grade of the street on the margin of a lot of ground owned by him in the city of Springfield. Commissioners were appointed by the circuit court, as provided by the statute, who filed a

report assessing the plaintiff's damages at two hundred dollars. Exceptions were filed to this report and were heard by the circuit court. Upon the hearing of these exceptions a mass of evidence was introduced, which was taken under advisement by the court, after which the exceptions were overruled and judgment entered against the city in conformity with the report.

The city, appealing, assigns for error that there was no evidence that, before proceeding to view the premises, the commissioners gave five days' notice by advertisement in the newspaper doing the city printing, as required by the statute. An examination of the record discloses the fact that there was no evidence that such notice was given, except that the report of the commissioners recites that five days' notice was given in the "Springfield Leader", a newspaper doing the city printing of said city, of their meeting, and the time, place, and purpose thereof. This recital was not evidence of the fact of such notice having been given. We concede it to be a rule in the law of jurisdiction that a tribunal exercising special and limited powers cannot create for itself a jurisdiction by reciting upon its record a fact necessary to its jurisdiction; but we understand that such fact must otherwise appear.

But the irregularity in this case is cured by the following recital in the record of the subsequent proceedings in the circuit court: "There was no question raised by the city as to the amount of the plaintiff's damages; but it was conceded if he was entitled to recover damages in this action, the sum adjudged was not too large." As the only jurisdiction possessed by the commissioners was to assess damages, and as the amount of damages sustained is thus conceded by the city independently of their report, the irregularity above spoken of is cured, and it would not be proper to reverse the judgment in order that the same proceeding may be regularly gone through with again for the purpose of reaching a result which is admitted to be correct. Rev. Stat., sec. 3775.

The evidence adduced on the hearing of the exceptions showed that the change of grade for which the commissioners awarded the plaintiff damages consisted in raising the grade of the street in front of this lot by about one foot, and of the subsequent raising of the curbing and guttering, so as to conform to the new level of the street. It does not appear that the grade thus newly created was authorized by any ordinance, but it appears that it was about a foot above the grade which had been previously established by ordinance. It also appears that the work was inspected by a committee of the city council called the "street committee," that they reported favorably thereon, and that it was adopted, by a vote of the city council, as executed. Upon this state of facts, the contention of the city is, that this is a case where the injury flows from the negligent doing of work, not in conformity with the ordinance prescribing the manner in which it shall be done, and that the city is hence not liable for it in this proceeding, but, if liable at all, is liable only in an action in the nature of an action on the case for damages for negligence. The plaintiff, on the other hand, contends that the subsequent formal ratification by the city was equivalent to a prior authorization; that the vote of the council accepting the work as done and ordering the assessment of a special tax for its payment was tantamount to a previously existing ordinance authorizing it to be done as it was done; from which, according to his view, the conclusion follows that this is a case where private property has been damaged for public use within the meaning of the constitutional provision above quoted, and where the damages must, therefore, be ascertained in conformity with the above statute and not sued for and recovered in an action grounded upon negligence.

In a case which arose and was decided in the Supreme Court prior to the enactment of the above statute, a city was sued by a property-owner, for damages sustained by him in raising the grade of a street in front of his lot in a negligent and unskilful manner. The

action was an action at common law grounded upon neg-
ligence.  Referring to the provision of the constitution
above set out, the Supreme Court, speaking through
Hough, J., said; "When property is damaged by
establishing the grade of a street, or by raising or low-
ering the grade of a street previously established, it is
damaged for public use within the meaning of the con-
stitution.  No such provision, however, as is contem-
plated by the constitution, has ever been made by
the legislature for ascertaining the compensation in
cases where property is damaged by a change of grade.
The compensation provided for by this section of the
constitution, is compensation alone for the lawful execu-
tion of the public work causing the damage, and not
for the negligent and unskilful construction thereof.
For damages arising from the negligent and unskilful
execution of the work an ordinary action undoubtedly
still remains to the party injured.  Compensation for such
damages could not be ascertained in advance of the execu-
tion of the work."  *Werth v. City of Springfield*, 78 Mo.
110.  This is not the statement of a new principle.  The
general rule undoubtedly is, that no common-law action
lies for an injury resulting from the due, proper, and
careful prosecution of a work authorized by the charter
or governing statute of a corporation, but that in such
cases the remedy must be sought in the mode pointed
out in the charter or statute for assessing the damages.
On the other hand, it is equally as well settled that an
action at common law will lie for injuries which are the
result of an abuse of the powers of a corporation, or of
a negligent execution of them.    Thomp. Neg. 569, and
cases cited.    But we need not speculate whether a
common-law action would lie in the present case upon
this principle.   The inquiry is whether the plaintiff has
shown a case within the language and intent of a stat-
ute; if he has, he is entitled to proceed thereunder to
have damages assessed in the mode there pointed out,
and cannot have redress in any other kind of action,

because, by the terms of the statute, the remedy there given is exclusive.

The real inquiry, then, seems to be whether, in a proceeding under the statute, it is necessary for him to show that the grade, as finally made, was established by ordinance. Outside of the statute, it has been several times held in this state that, in order to hold a municipal corporation liable to a property-owner for damages resulting to him from a change of the grade of a street, it is necessary to show that the grade was originally established by ordinance, and that the change was authorized by ordinance. *Stewart v. City of Clinton*, 79 Mo. 603; *Werth v. City of Springfield*, 78 Mo. 107; s. c., on second appeal, 22 Mo. App. 12. If this were an action outside of the statute, these decisions, however unjust in their consequences, would be binding upon us. But this is a proceeding under a special statute, and the statute imposes no such condition as a ground of relief. It recites, "that in all cases *where the proper authorities* in any city in this state have graded or regraded, or may hereafter grade, or change the grade or lines of any street or alley," etc. It does not say that in all cases where the proper authorities have done this *by ordinance*, or in the precise manner pointed out by their charter, or by the governing statute, the property-owner shall be entitled to this relief. It predicates his right to it upon the fact of the street having been graded or regraded by the proper authorities. In so far as it does this, it necessarily operates as an amendment of, and a limitation upon, any precedent statute or charter, in so far as the latter conflicts with its terms. The plaintiff's evidence brings his case strictly within the language of this statute. It shows that the street was raised to the present grade by the proper authorities, and that the grade as so made was ratified by the city by its being accepted by the street committee and approved by a vote of the council. This was sufficient to bring the case within the reasoning of this court in *Schumacher v. City of St. Louis*, 3 Mo. App. 299, and of the Supreme

Court in *Sheehan v. Gleeson*, 46 Mo. 104. The statute was obviously drawn with the view of not depriving the property-owner of this redress in cases where the city might proceed in an informal manner in the execution of its ordinary powers. The reason why he should not be deprived of the statutory redress in such cases is perfectly obvious. He cannot control the authorities of the city in respect of the manner in which they shall proceed in executing their powers. The case is entirely different from a case where he voluntarily enters into a contract with the city, in which case he is at liberty to make the contract or refuse to make it, and in which case he is consequently bound to see to it that the officers of the city are proceeding within the scope of their powers. He is here the passive sufferer in something which has taken place without any voluntary action on his part. His property is equally damaged for the public benefit, without reference to the fact whether the city had proceeded in making the improvement in a formal or in an informal manner. The improvement is made ; the city has paid for it ; the public has received the benefit of it and has entered upon the use of it, and his property has been damaged by it. This makes a case in which he should have compensation within the meaning of the constitutional provision, and it makes a case within the letter of the statute.

It is not a necessary conclusion that the act of elevating the bed of the street in front of plaintiff's property is to be ascribed to the negligence or tortious conduct of the agents of the city. It may as well have been due to some slight defect in the plan furnished by the original ordinance by which the grade was established, whereby the grade as thus established would not connect with the grade of some other street established by some other ordinance ; or it may as well have been due to some slight change in the grade rendered necessary by the action of the elements or other changes which may have taken place subsequently to the passage of the ordinance by which the grade was established.

It is not a sound view that a slight deviation from the plans and specifications prescribed by an ordinance authorizing a municipal improvement renders the work the act of the agents or contractors who have done it, and not the act of the corporation. Upon this subject it was well said by Bliss, J., in giving the opinion of our Supreme Court: "As a matter of necessity, some discretion must be left to the executive officers. It would be difficult for ordinances to specify every particular of a work, but they must be more or less general, and must take many things for granted in the history, geography, and topography of the place, and in the arts called into requisition by the improvements ordered. And we should further premise that an ordinance may lack desirable precision, and still may so provide for the manner in which an improvement shall be made, and be such a compliance with the law, although a loose one, that the courts would not be authorized to invalidate the action of the city officers under it. It is not every irregularity or omission that goes to the substance of a proceeding." *Sheehan v. Gleeson*, 46 Mo. 104.

Whatever may have been the occasion of it, it does not lie in the mouth of the city to say that the act is not done by the proper authorities of the city, within the meaning of the statute, but that it is the mere tortious act of its agents, after having *accepted it* and *ratified* it by a vote of its council upon the report or reports of a committee thereof in the solemn exercise of its legislative functions. The rule that a subsequent affirmation or consent is equivalent to a previous authorization, is as applicable to corporations as to individuals. *Plantters' Bank v. Sharp*, 4 Sm. & M. 75; *Everett v. United States*, 6 Port. 166; s. c., 30 Am. Dec. 584; *Despatch Line v. Bellamy Man. Co.*, 12 N. H. 205; s. c., 37 Am. Dec. 203; *Holmes v. Board of Trade*, 81 Mo. 137. Although doubts have been expressed whether this rule applies to municipal corporations in like manner as to natural persons (*McGary v. Lafayette*, 12 Rob. [La.] 676; *Mitchell v. Rockland*, 52 Me. 118, 125), yet it

seems to be settled in this state, in conformity with authority elsewhere (*Ross v. Madison*, 1 Ind. 281 ; *Thayer v. Boston*, 19 Pick. 511) that it does. *Schumacher v. City of St. Louis*, 3 Mo. App. 299 ; *Barrett v. County Court*, 44 Mo. 198.

In *Schumacher v. City of St. Louis, supra,* this principle was applied by this court in an action by a property-holder against the city of St. Louis for damages sustained by him in changing the grade of the street in front of his property, so as to make it answer the contention of the city that the ordinance under which the change of grade had been made was itself invalid. In other words, this court held that a ratification by the city would cure an invalidity of the ordinance under which the grade was changed,—which was tantamount to holding that such a ratification may supply the want of a valid ordinance. In giving the opinion of this court, Lewis, P. J., said : "If the act from which injury results be wholly beyond the scope of powers conferred on the municipal corporation, the latter cannot be held responsible in damages. But if it be within the scope of such powers, and be authorized by the municipal officer invested with jurisdiction to act upon the subject to which the particular act relates, or be afterwards even impliedly ratified by the corporation, a liability will attach in like manner as if the act had been done by an individual. *Thayer v. City of Boston*, 19 Pick, 511. A mere technical departure from the mode in which the powers are directed to be exercised will in no such case discharge the corporation. *City of Pekin v. Newell*, 26 Ill. 320. The grading of the street in front of plaintiff's property was within the corporate powers of the city. It was done by authority of the officers having in charge that department of municipal service, and the whole testimony taken together conclusively shows that the act was, impliedly at least, ratified by the corporate authorities. Even if the ordinance had lacked some technical element of validity there was an attempt by the proper officers to execute a charter power, which is

sufficient for the purposes of this case, according to the authorities above cited."

This reasoning amply sustains the present proceeding. Although the ordinance may have been departed from, the officers of the city were proceeding to make an improvement within the general limit of its corporate powers. The improvement was made and was afterwards ratified and accepted by the city as made. It was *expressly*, and not *impliedly* ratified, as in the case just cited. It was a "public improvement causing damage to private property for public use, within the meaning of section twenty-one of article two of the state constitution, without the consent of the owner of such property," and, therefore, the case before us is within the terms of the statute under which this proceeding was instituted; and by section eight of the statute this proceeding is exclusive of all other remedies. The policy of the statute is to have such damages assessed by competent and disinterested freeholders appointed by the circuit court, so as to award just compensation to the owner whose property has been taken or damaged and at the same time do justice to the city. This case is manifestly within the policy of the statute. It can scarcely be doubted that a more just assessment of damages would be made by a board of competent and disinterested freeholders—men of standing and substance in the community—than by such a jury as might often be hastily empaneled to try an action for damages in the circuit court.

We, therefore, concur in the manner in which the learned judge of the circuit court disposed of this case upon the merits of the controversy, and we affirm the judgment. Judge Rombauer concurs.