[Filed July 1, 1889.]

# THE PORTLAND LUMBERING & MANUFACTURING CO. *v.* THE CITY OF EAST PORTLAND.

MUNICIPAL CORPORATION—CORPORATE POWERS OF THE CITY OF EAST PORTLAND.— By § 1, Art. 6, of the charter of the city of East Portland the common council of said city has full power, amongst other things, to improve the sidewalks, pavements, streets and all parts of streets within the limits of the city, making full or partial improvements thereof, to determine and provide for everything necessary or convenient to the exercise of the authority therein granted.

MUNICIPAL CORPORATION—POWER TO CONTRACT.—The power to contract inheres in every corporation and is co-extensive with its corporate powers.

MUNICIPAL CORPORATION—ULTRA VIRES.—The plea of *ultra vires* should not, as a general rule, prevail, whether interposed for or against a corporation, when it would not advance justice, but on the contrary would accomplish a legal wrong.

APPEAL from Multnomah county.

STRAHAN, J.—This is an action to recover against the defendant for the agreed price and value of certain materials

furnished by the plaintiff for the defendant and used in the improvement of one of its streets by the direction of its common council.

The third amended complaint states the facts upon which the plaintiff relies, in substance, as follows: That the plaintiff is a private corporation, and the defendant a public municipal corporation; that on the eighth day of September, 1883, the common council of the city of East Portland duly passed a resolution to improve L street in said city from Water. street to Twelfth street in said city, in pursuance of which the following notice was published for the full time and in the manner required by the city charter:

### "IMPROVEMENT OF L STREET.

"Notice is hereby given that the common council of the city of East Portland proposes to improve L street from the west line of Water street to the center line of Twelfth street as follows: By building an elevated roadway and sidewalk of full width from Water street eastward to the bank of earth elevated between Third and Fourth streets, and from such point eastward to Fifth street by laying where the same may be required a plank roadway of full width with sidewalk; and from Fifth street eastward to Asylum slough by laying a gravel roadway full width with wooden gutters and cross-walks where required; by building an elevated·roadway and sidewalk of full width across Asylum slough, and from Asylum slough to Twelfth street by laying a gravel roadway full width with wooden gutters, sidewalks and cross-walks. All of said improvements to be on the established grade, and cost of same to be assessed to adjacent property.

"By order of the common council.

"J. F. STEWART, auditor and clerk."

That no other notice was given for such improvement, and said resolution was substantially the same as the said notice; that afterwards, on the fifteenth day of October,

1885, the said common council passed an ordinance No. 325, entitled, "An ordinance to provide the time and manner of improving L street," which ordinance is as follows:—

"The city of East Portland does ordain as follows:

"Whereas the common council or board of trustees of the city of East Portland has, at different times, made partial improvements on L street in the city of East Portland, and whereas the common council now proposes to make a full improvement of said street from the west line of Water street to the center line of Twelfth street; therefore, the city of East Portland does ordain as follows:

"§ 1.   The proposed full improvement of L street from the west line of Water street to the center line of Twelfth street, as hereafter provided, shall be completed on or before the first day of February, 1884, due notice thereof having been given by publication, as will more fully appear by the proof thereof, duly presented and filed in the office of the auditor and clerk.

"§ 2.   The improvement of said street shall be made as follows:   By building an elevated roadway and sidewalks full width of streets, in accordance with the plans and specifications made by the city surveyor and filed with the recorder of said city, and adopted by the common council October 15, 1883, from the west line of Water street eastward to the land or earth elevation between Third and Fourth streets, and from such point eastward to Fifth street by laying a plank roadway full width with plank gutters and sidewalks, and from Fifth street to Asylum slough by making a gravel roadway of full width with plank gutters, side and crosswalks, and by building an elevated roadway and sidewalks of full width of said street in accordance with the plans and specifications made by the city surveyor and filed with the recorder and auditor and adopted by the common council October 15, 1883, and from the Asylum slough eastward to the center line of Twelfth street by making a graveled roadway of full width with plank gutters and side and cross-walks.

"§ 3. All of said improvements to be upon the established grade and made in accordance with ordinance No. 397 of the city of East Portland, and entitled 'An ordinance relating to the improvement of streets.'

"§ 4. All of said improvements shall be made at the expense of the adjacent property and shall be completed to the satisfaction of the committee on streets and public property, the city surveyor and street commissioners.

"§ 5. The contractor shall take control of the work during its progress, and he shall be responsible for any accident occasioned by carelessness or neglect."

That said ordinance was duly approved by the mayor of said city, and afterwards, on the tenth day of November, 1883, the city, acting by and through its committee on streets and public property, by virtue of ordinance No. 397, entitled "An ordinance relating to the improvement of streets and letting contracts therefor," approved August 9, 1883, entered into a contract with C. L. Spore to improve said L street abutting upon blocks Nos. 140 and 162, among others, a copy of which contract is hereto attached and marked "A" and made a part hereof, and at the same time made a contract similar in terms, except the prices were different, with Keenan & Hamilton for the improvement of L street abutting on blocks 83 and 100; that said Spore and Keenan & Hamilton duly furnished bonds for the faithful completion of said work; that thereafter, and within the time required by said ordinance, said Spore and Keenan & Hamilton duly completed the work required by said contract upon said street opposite the said blocks 83, 100, 140 and 162, and that afterwards the said city and the said Spore and the said Keenan & Hamilton together, for and concerning the work done under said contracts opposite the said blocks Nos. 83, 100, 140 and 162, and there was found to be due to the said Spore the sum of $1,944.80, and to the said Keenan & Hamilton the sum of $4.2.70, and that thereupon the said city issued its warrants as follows:

"$79.86.        East Portland, Or., March 5, 1884.

"To the treasurer of the city of East Portland: Pay to

C. L. Spore, or bearer, seventy-nine 86-100 dollars out of the special fund for the improvement of L street, assessed upon lot 3, block 162, for the improvement of said street. "Attest:                           "I. N. SAUNDERS, mayor.
     "J. T. STEWART, recorder."

Then follows a large number of other warrants in like form and in varying amounts, each one payable out of the fund for the improvement of L street, assessed upon some lot or lots either in block 83, 100, 140 or 162, and amounting in the aggregate to the sum of $2,387.50. That each of said warrants was duly presented to the treasurer of East Portland and payment thereof refused for want of funds to pay the same; that each of said contracts as well as each of said warrants issued and all claims thereunder were duly assigned to the plaintiff, and that plaintiff is now the owner and holder thereof; that at various times since said warrants were duly presented for payment and payment thereof refused by the defendant, and that the defendant was also requested to provide a fund for the payment of said warrants, which it refused to do; that the city has failed, neglected and refused to cause the said several sums to be assessed to the said several lots and blocks named in said warrants to be collected, except that the owner of block No. 140 paid into court for the benefit of said city the sum of $100, and the owners of block No. 162 paid into this court the sum of $100 for the benefit of said city; that said sums were paid on account of said improvements and were received by said city on account thereof and were paid by said owners in payment upon their said assessments; that the total amount assessed by said city of East Portland for the improvement mentioned in said ordinance for the improvement of L street was $17,489.69; that there has been paid into the city treasury on account of said improvements the sum of $11,117.62, all of which has been paid out by said city upon other warrants issued for said improvements except the sum of $200 collected as herein set forth; that the payment of all said sums upon other warrants to the exclusion of the plaintiff's said war-

rants was wrongful and without authority of law; that said city refuses to take any further steps to collect said money or to pay said warrants.or any part thereof.

By the terms of the contracts entered into by the city with the contractors, and which are annexed to the complaint as a part thereof, the city agreed and obligated itself to pay for the work according to certain rates specified by warrants to be drawn upon the fund to be collected and paid into the city treasury for that purpose.

To this complaint the defendant demurred for the reason the same does not state facts sufficient to constitute a cause of action. The demurrer was sustained by the court and a final judgment entered against the plaintiff for costs, from which judgment this appeal is taken.

1. By article 6, section 1, of the amended charter of East Portland it is among other things provided:—

"§ 1. The common council is authorized and empowered to lay out, establish, vacate, widen, extend and open streets, or parts of streets, and alleys, or parts of alleys, in said city, and appropriate private property for that purpose, and to alter and establish the grade of any street or part thereof, and to improve the sidewalks, pavements, streets, and parts of streets, within the limits of the city, making full or partial improvement thereof. And it has full power to determine and provide for everything necessary and convenient to the exercise of the authority herein granted."      *      *      *.

Section 2 of article 6 is as follows:—

"§ 2. When any improvements mentioned in the preceding section are to be made, the common council shall cause the recorder to give notice of the same by publishing a notice for fifteen days previous to the undertaking of such improvements in some daily or weekly newspaper published in the city of East Portland; such notice must specify with convenient certainty the street or part of street proposed to be improved or on which the grade proposed to be established or altered and the kind of improvements to be made."

Section 3 authorizes the owners of a majority of the property adjacent to such street or part thereof, as the case may be, to make and file with the recorder within ten days from the final publication of such notice a written remonstrance against the proposed improvement, grade or alteration thereof, and thereupon the same shall not then be further proceeded with or made.

Section 4 empowers the council, if no such remonstrance be made, at its earliest convenience within six months from the final publication of such notice, to establish the proposed grade, or alteration thereof, or to commence to make the proposed improvement as thereinafter provided.

Section 5 of said article is as follows:—

"§ 5. In case the notice be for the improvement of a street or part thereof, the council may proceed to ascertain the probable cost of making such improvement and assess upon each lot or part thereof liable therefor its proportionate share of such cost; and if the council shall adjudge that any such lot or part of lot would not be benefited by the improvement in the full sum of the cost of making the same upon the half of the street abutting upon each lot or part of lot, the council shall assess upon such lot or part of lots as its proportionate share thereof such sum only as it shall find such lot or part of lot to be benefited by such improvement."

Section 6 directs when the probable cost has been ascertained and determined, the council must declare the same by ordinance and direct its clerk to enter a statement thereof in the docket of city liens, as provided in the next succeeding section.

Section 7 defines the docket of city liens and prescribes the effect of entries therein.

Section 9 prescribes the manner in which the auditor shall ascertain the ownership of property in the city to be affected by this tax.

Section 10 prescribes a notice of fifteen days before a sum of money assessed for a street improvement is col-

lectible, and how such notice must be given and what it shall contain.

Section 11 prescribes when and under what circumstances a warrant may issue for the collection of such tax, and sections 12, 13, 14, 15, 16 and 17 prescribe what the warrant shall contain and the manner°of executing it, and on what terms and how property sold for such tax may be redeemed.

Section 18 prescribes that if the benefits to accrue to a particular lot shall not be equal to the cost of making such improvement, the excess of the cost over and above the benefits received shall not be paid out of the general fund of the city.

Section 19 relates to the cost of improving at the intersection of streets.

Section 20 declares the effect of a tax sale under the preceding sections.

Section 21 authorizes any one having a lien on any lot by judgment, decree or mortgage, after any such tax becomes delinquent, to pay the same and add the amount to his lien.

Section 22 provides that "the council must provide by ordinance for the time and manner of doing the work on any proposed improvements, subject only to the following restrictions: 1. After proper notice the work must be let to the lowest responsible bidder; but a bid by the owner or owners of all the property in a block fronting on a street proposed to be improved must be accepted if as low as any other bid, and the council may provide for the rejection of any or all bids deemed unreasonable, and that the bid of any person who has before bid or contracted for such work and been delinquent therein shall not be received. The council shall provide for taking security by bond for the faithful performance of any contract let under its authority, and the provisions thereof shall be enforced by an action in the name of the city of East Portland."

Section 23 provides what shall be done upon the completion of the work; and section 24 provides for a further

assessment against the piece of property where the first was insufficient to pay the cost thereof.

Section 25 provides for returning the surplus to the lot owner in case more money was collected than was necessary.

Section 26 provides that moneys collected upon assessments for improvements shall be kept as a separate fund and in no wise used for any other purpose whatever.

The other sections of the article relate to the subject of street improvements, but they in no manner affect the questions presented by this record.

1.   The only question presented for our consideration is the question of the city's liability under the facts above stated.   In *Hawthorne* v. *East Portland*, 13 Or. 271, this court had some of the facts growing out of the improvement of L street before it.   In that case it was held that because the notice given by the council of the proposed improvement contained the words by laying, "where the same may be required," a plank roadway, etc., the city failed to create a lien upon the abutting property for the cost of such improvement.   It is now insisted that, by reason of such defective notice, the city is in no manner liable for the material or labor used in making the improvements, although the contractors fully performed their agreement and completed the work according to the plans and specifications for the same.   By turning again to section 1 of article 6 of the charter, *supra*, it will be seen that the common council possesses plenary power, amongst other things, to improve the sidewalks, pavements, streets and all parts of streets within the limits of the city, making full or partial improvements thereof, *and it has full power to determine and provide for everything necessary and convenient to the exercise of the authority herein granted.*   Power could hardly be conferred in more comprehensive terms, and standing alone there could be no doubt that in the exercise of this power the council would have authority to provide money that might be necessary from any source from which it is authorized by its charter to raise money for corporate purposes; to pay for such improvements,

money would be both necessary and convenient for such a purpose.

Waiving, for the present, any reference to the subsequent provisions of the charter, let us follow for a short time some of the authorities which seem to have a bearing on this subject. *Maher* v. *The City of Chicago*, 38 Ill. 266, is a case where the plaintiff did work for the city in dredging and deepening the river in front of certain lots with the understanding that he should be paid from special assessments to be made upon the property for that purpose. The courts decided that no special assessments could be made for such purpose, but the city was held liable. In passing upon the city's liability, the court said: "Unless we assume that the council issued its warrant to compel the payment of money under pretense of liquidating a liability, which they intended afterwards to deny, an assumption we would by no means make, then we must regard it as settled that that body, by a deliberate official act, appropriated the plaintiff's work, and acknowledged it to create a valid debt against the city. To hold otherwise would be to hold that the council was endeavoring to raise money, by a compulsory process, upon pretenses that were false. The actions of the mayor and other officials may not have bound the council, but by this proceeding it recognized and ratified that action and deliberately bound itself." So in *City of Leavenworth* v. *Mills*, 6 Kansas, 288, it was said: "The contractor and his representatives had no authority to sell said lots, nor to enforce payment for the contractor's services in any other manner from the lot owners. The lot owners are never directly or primarily liable to the contractors for grading done by him; they are liable to the city only, and the city is primarily liable to the contractor." Further on the court say: "In this case the city did not take the necessary steps to relieve itself from liability to the contractor, and hence the judgment of the court below against the city and in favor of the representatives of the contractor, for the value of the grading, was correct." *Leavenworth* v. *Stitle*, 13 Kan. 539,

is another case where the city was held liable for grading in a case where it undertook to provide for the payment by special tax, but the assessment was void by reason of some informality.   The property in front of which the grading was done belonged to Stitle's wife; but he did the grading under a contract with the city.   In disposing of the case, the court said:   "Stitle petitioned, along with others, for the grading to be done; he sometimes in speaking of the real estate called it his; it is claimed that he did not do the full amount of grading that he agreed to do, and that some of it was not in the street; but it was done where the city engineer instructed that it should be done; and the city engineer afterwards inspected and accepted the work, and made a report thereof to the city council, and the city council regularly confirmed the engineer's report and levied a tax to pay for the grading;   *   *   *   but the city never provided any means for the collection of said tax. It is true, the city treasurer sold some of the property on said street to pay said tax, but the sale was unauthorized and void."   So in *Kearney* v. *Covington*, 1 Metc. Ky. 339, it was held where a person was employed by a city council to do work on a public street under an agreement that he should be paid for it when completed, by a tax on the lot owners; if the city fails to adopt such measures as the charter requires to render the lot owners responsible, it is liable to the contractors.   In this case the city failed to comply with the charter, so as to make the tax collectible upon which the plaintiff relied for payment.   It was accordingly enjoined, and it was held that in such case the city was liable.   *Morgan* v. *City of Dubuque*, 28 Iowa, 575, is another case very much in point.   The plaintiff was to be paid for the work when the city collected the cost of it from the owners of adjoining lots.   The court say: "Under the contract with the plaintiff the city was bound to collect the assessments within a reasonable time after the work was done and pay the plaintiff.   A failure to do so would render the city liable to pay the stipulated price for the walk.   The burden of proof of diligence rests upon the

city." So in *Louisville* v. *Hyatt*, 5 B. Mon. 199, the con-
tractor expressly agreed to look to the lot owners and
not to the city. A certain ordinance upon which the con-
tractor and the city relied proved to be invalid. In dis-
posing of this phase of the case the court said that any
intention or agreement or stipulation on the part of the
undertaker that he would look to the lot owners, and not
to the city, for remuneration, was founded not upon the
understanding that he was to get no compensation if the
lot owners were not bound to make it, but on the under-
standing, based upon the acts and representations of the
agents of the city, and upon her express undertaking;
that such orders had been and would be made by the mayor
and councilmen as were effectual to secure it for them.
If the mistake on the subject was mutual, it was produced
by the assumption on the part of the city, through her
agents, that the orders were effectual. The facts upon
which their efficacy depended were peculiarly within their
knowledge, and the undertaker was not bound to inquire
further, but was authorized to confide in their assumption.
And *Gutherie* v. *Louisville*, 6 B. Mon. 575, is to the same
effect. *Craycraft* v. *Selvage*, 10 Bush, 696, seems to lay
down a different rule; but an examination of that case will
show that the earlier Kentucky cases, from which I have
made some extracts, are expressly approved, and that the
difference was created by an amendment to the charter of
the city of Louisville, which provided that "in no event
shall the city be liable for such improvement [of streets]
without having the right to enforce it against the property
receiving the benefit thereof." It is proper, in this con-
nection, to remark that the charter of the city of East
Portland contains no such limitation. The *City of Memphis*
v. *Brown*, 20 Wall. 289, is a case where the construction of
the charter of the city of Memphis came under review in
the supreme court of the United States. In that case the
charter provided, that "the board of mayor and aldermen
shall have power to improve, preserve and keep in good
repair, the streets, sidewalks, public landings, and the

squares of the city." The charter further provided, that the city may require lot owners to improve the streets fronting their lots, and that should any owner fail to comply with any ordinance requiring him to repair, grade and pave the same, the mayor and board of aldermen may contract with some suitable person for repairing, grading and paving the same, and pay therefor, and collect the amount of the lot owner. In construing these provisions of the charter, the court said: "General power and authority over the subject is by law given to the city, and the power also vested in the city to require that the cost may be assessed upon the adjoining owner, does not impair the power of the city itself to do the work. It is permissive merely. The city may require the owner to pay, but it is not compelled to do so." In principle, *Michel v. Police Jury of West Baton Rouge*, 3 La. Ann. 123, seems to be almost identical with the case under consideration. In that case, authority to make a road and levy on the plantation of Collins Blackman was adjudicated to the plaintiff. He took his executory proceedings against the land which were enjoined on the ground that notice had not been duly given to the proprietors according to the police regulations of the parish. On the failure of his recourse against the land, he sued the police jury and obtained a verdict for the amount of the adjudication, and this recovery was sustained.

Many other authorities declare the same principle. *(Kapp v. The Mayor*, etc., 38 N. J. L. 371; *Argentie v. City of San Francisco*, 16 Cal. 255; *Elbert v. The City of Oshkosh*, 14 Wis. 637; *City of Atchison v. Byrnes*, 22 Kans. 65; *Hill v. City of Denver*, 29 Fed. Rep. 344; *The San Francisco Gas Co. v. The City of San Francisco*, 9 Cal. 453; *The State Board of Agriculture v. The Citizens' Street R. R. Co.*, 47 Ind. 407; *Thayer v. City of Boston*, 19 Pick. 510; *Hohn v. Trustees of the Town of Bellview*, 3 S. W. Rep. 132; *Moore v. Mayor*, 73 N. Y. 238; 2 Dillon on Municipal Corp., § 936; *Baldwin v. City of Oswego*, 41 N. Y. (2 Keys) 132; *Cummings v. The Mayor and Aldermen of Brooklyn*, 11 Paige Ch. 596; *Frush*

XVIII. Or.—3.

v. *East Portland,* 6 Or. 281; *N. P. L. & M. Co.* v. *East Portland,* 14 Or. 1; 30 Mo. App. 669.)

After the most careful examination of this case that I have been able to give it, and after considerable doubt and hesitancy, I have reached the conclusion that under the facts disclosed by the amended complaint, the city is liable, and this upon the decided weight of authority.   The power and duty is enjoined upon the common council of the city to improve the streets and to keep them in a suitable state of repair.   Permission is given to levy the cost of such improvement on the adjacent property, but it is nowhere declared in the charter that it must do it in that way, or that it is precluded from doing it in any other.   And where the city has proceeded in the utmost good faith with its improvements, and the contractor has fulfilled all of his engagements with the city, I am unwilling to say that he shall not be paid because of a technical defect in the notice, which ordinary judgment and sagacity could hardly guard against.   Besides, I do not think, under the charter, this technical defect in the notice destroyed or impaired the power of the city to contract.   That power inheres in every corporation and is coëxtensive with its corporate powers; but in this instance we do not have to depend on implication.   The power is conferred in the plainest and most comprehensive terms.   The defendant's claim is not that the general power did not exist, but there was a slight departure from the authority conferred in the particular already pointed out, and for that reason the whole proceeding was *ultra vires* and void.   Under the circumstances of this case, I am unable to accede to this argument.   Nor is a corporation always, and in every way, allowed to avail itself of this plea.   Said Allen, J., in *Whitney Arms Co.* v. *Barlow,* 63 N. Y. 62:   "The plea of *ultra vires* should not, as a general rule, prevail, whether interposed for or against a corporation, when it would not advance justice, but on the contrary would accomplish a legal wrong."   The respondent relies upon *The Springfield Milling Co.* v. *Lane Co.,* 5 Or. 265.   That was a case where a superintendent of

a bridge, with power to let a contract for its construction and superintend it, purchased lumber without authority and used it in the construction of the approaches to the bridge, and it was held that Lane county was not liable, on two grounds: 1.   It was a case where the letting must have been to the lowest bidder; and 2.   Powers, the superintendent exceeded his authority.   The principle of the case does not seem to me to be controlling here.

*Saxton* v. *The City of St. Joseph*, 60 Mo. 153, is another case relied upon by the defendant.   That was a case where the common council adopted a resolution ordering the city engineer to let a contract for macadamizing a street, without the concurrent action of the mayor, and it was held the city was not liable; the court holding that the concurrence of the mayor was necessary to give any validity to the proceeding.   *Swift* v. *The City of Williamsburgh*, 24 Barb. 427, is another case relied upon by the defendant.   In that case, the city was not authorized to take any proceeding whatever to open, regulate, grade or pave any street or avenue, except upon petition signed by one-third of the persons owning land situated within the assessment limits. The council proceeded without such petition, and the city was held not liable, and properly so.   In that case the court expressly draws the line of distinction between cases where a general power is conferred and one where it is of a more limited nature, and cites 2 Sandf., S. C. R. 344, and 4 Seld. 130 as examples.   *McCullough* v. *The Mayor, etc., of Brooklyn*, 23 Wend. 458, is another case relied upon by the defendant.   That was a case where the corporation took the land of the plaintiff for a street, which it was authorized to do, and to assess the damages upon the property benefited.   The complaint alleged every fact except the payment of the award, but the court held that this fact ought also to have been averred.   The court further held, in that case, that it was the duty of the common council to take the necessary measures to have the sums assessed, collected, and for *the neglect* of that duty, *an action on the case* would lie.   After this examination of the preceding

part of the charter, and of the authorities, we can better
appreciate the force and meaning of section 5 of article 6
of the charter.   So much of that section as is supposed
by the defendant to be controlling by the defendant's
counsel, is as follows:   "In case the notice be for the
improvement of a street or part thereof, the council *may*
proceed to ascertain and determine the probable cost of
making such improvements, and assess upon each lot, or
part thereof, liable therefor, its proportionate share of
such cost."   A different form of expression is used in the
succeeding sections in reference to the assessments upon
lots.   When the probable cost of the improvement has been
ascertained and determined, *and the proportionate share
thereof for each lot, or part of lot, has been assessed,* as herein
provided, the council *must* declare the same by ordinance.
(§ 6.)   The docket of city liens is a book in which *must* be
entered, etc.   (§ 7.)   These forms of expression are not
necessarily conclusive, but I think where the meaning of
the charter is not free from doubt, they have weight in
determining the question.   There are two cases in this
court involving the liability of the city of East Portland
under its charter for work done on its streets to improve
the same.   The first is *Frush* v. *The City of East Portland,
supra.*   In passing on this case, the court says:   "It will
be observed, that though the improvements were local,
there is nothing in the contract to show that it was in the
minds of the contracting parties, at the time the same was
entered into, that a special and local tax was to be resorted
to in order to raise the fund from which the warrants were
to be paid.   The contract provided simply that the respond-
ent should do certain work at a stipulated price, and upon
its completion and acceptance the city would pay him the
contract price through the instrumentality of warrants, to
be drawn upon a fund which the city agreed to provide for
the purpose of liquidating the same."   The force of this
language is too plain for controversy.   It clearly recog-
nizes the power of the city to create a liability against
itself for work in improving its streets, and for which it

may be generally liable without first making a local assessment from which alone the liability is to be discharged. And in *N. P. L. & M. Co.* v. *East Portland, supra,* this court felt compelled to adhere to *Frush* v. *East Portland.* So that in every view of the subject, whether on the construction of the charter alone, or the general principles of law, or the adjudged cases in this court, the defendant is liable on the facts before us.

The judgment of the court below must therefore be reversed and the cause remanded for further proceedings.

LORD, J., concurring.—For the purposes of this case, it may be admitted that a municipal corporation cannot contract in any other mode than is authorized by its charter. When to make a contract for the improvement of a street and to provide the funds to pay for it, the charter prescribes it shall only be done by local assessments on the abutting property, this amounts to a direct inhibition against making any contract for such improvements only as such mode is pursued, and the failure or omission of the city to create the fund from the resources indicated to pay for such improvements, when made, will not subject the city to any general liability therefor. The reason is plain. As the city is without any general power to contract for and provide the funds to pay for such improvements, except by way of local assessments, it necessarily results that it cannot be subject to any general liability. To subject the city to a general liability, there must be some general power under which it would be authorized to raise the funds to pay for such improvements. But where such general power is conferred, and an improvement is projected to be paid for out of funds to be derived from local assessments, and the city authorities upon whom is devolved the duty, neglect or fail to take the requisite proceedings to create the lien which is to supply the funds to pay for such improvement—the improvement being within the scope of the general power of the corporation, independent of the special mode by local assessments—such neglect or

omission, after the improvement is made, will subject the city to a general liability to pay therefor. By the charter of East Portland the trustees are authorized and empowered to improve streets, parts thereof, etc., and to do this, it is expressly given full power to provide everything necessary to the exercise of the powers granted, which necessarily includes the right to levy taxes and pay for such improvements of its streets out of the general fund. In a word, the general power is given to make street improvements and to provide the means of paying therefor. In addition to this, there is also conferred the power to make such improvements, etc., of streets by means of local assessments, or the creation of liens upon the property of abutting owners, as prescribed by § 2 *et seq.* As this last mode involves that kind of interference with individual right of property as subjects it to liens for local assessments upon the theory of benefits received, such powers can only be exercised where it is expressly conferred and the mode of its exercise prescribed; hence, to enable the city to make improvements by means of local assessments upon the adjoining property, it was necessary to expressly confer the power and the mode of its exercise, as without it the city would be confined to the general power. Such special mode of making such improvements and supplying the funds to pay for them is not, therefore, exclusive, but it was inserted in the charter *ex rei necessitate,* because it must be there to authorize the city to make such improvements by local assessments; but its existence does not abate or nullify the general power conferred, as both may coëxist without conflict, and be exercised as justice may require. So that, according to my view, there is the general power conferred on the corporation to make such improvement of streets or parts of streets, and to pay therefor without resort to the special mode by local assessments. And, if the corporation contract for such improvements, and the improvements are made, but are to be paid for by local assessments upon abutting property, and the city fails to perform its duty by doing the acts prescribed by the charter

to supply such fund, such negligence or omission of duty will subject it to a general liability. In *N. P. L. & M. Co.* v. *East Portland*, 14 Or. 6, 7, while the personal opinion was expressed that the city did not have any power to contract for a street improvement, it was held that where it undertook to provide for the payment of such improvement by local assessments, but failed or neglected to perform the required acts intended to supply such fund, a general liability attaches in consequence thereof. The language of Mr. Justice Thayer in that case is: "I do not think the city has any power to enter into any such engagement for the improvement of a street; but it does undertake to perform all the acts required by the charter, intended to supply the requisite fund to defray the expense attending it. And a failure to comply with any of the requirements of the charter by which the fund may be realized would subject it to a general liability." My concurrence in that result rests upon the principle that the right to subject the city to a general liability is based upon the general power conferred to make such improvement and to defray the expenses thereof out of the general fund; for, if the city has not such general power, but is confined exclusively in making and defraying the expenses of such improvements to the fund derived from local assessments upon abutting property, there would be no authority, even though there was a failure to perform all the required acts intended to provide such fund, and to subject the acts to a general liability. It would be *ultra vires*, and, in my judgment, the case in 14 Or., *supra*, could not be sustained. The right to subject the city to a general liability finds its authority in the general power conferred to make such improvements, as without it such improvements could only be authorized in the special mode prescribed, which would necessarily be exclusive, and could only be paid for out of the funds derived from local assessments. Unless, therefore, the city has the general power to make such improvements, the court could not subject it to a general liability, as it did in the case referred to, where the fund to pay for such

improvements was to be derived from local assessments which failed by reason of neglect to comply with the requirements of the charter; but according to my construction of the charter, I understand the city has the general power, expressly conferred, to make such improvements, and to do all acts or things necessary to effect that object, as well as the special power to make such improvements and to defray the expenses attending it by local assessments upon the abutting property; and that when such special power has not been pursued by reason of neglect, or omission, of the city authorities to take the proper steps to create the fund to pay for the improvement when the contract for such improvement has been fully performed on the part of the contractor, that the city may be subject to a general liability, because the improvement made, and of which the city has the benefit, was within the scope of its general powers, and for which the city could have provided and paid out of the general funds. It may be true that it imposes some hardship when an improvement is projected, the expense of which is to be defrayed by local assessments, that all should be taxed for the failure of the city officers to do their duty; but it is a greater hardship that he who performed the labor, or supplies the materials, or both, for making such improvements, and of which the city has the possession and benefit, should go without his pay, especially when the evil complained of may be remedied by procuring proper legislative authority to make a valid reässessment of the property in view of an assessment that is insufficient or defective, and thereby provide for reïmbursement.

THAYER, C. J., dissenting.—I am unable to concur in the opinion of the majority of the court delivered herein. My dissent, however, is from the premises from which the opinion is deduced. The premises claimed are, that the city of East Portland has, under its charter, general power to improve its streets and defray the expense thereof out of the general fund of the city. If this were so, then there

would be no ground of disagreement between my learned associates and myself.   But it seems to me that no one can carefully read the charter and arrive at such a conclusion. The charter does empower the common council of the city, among other things, "to improve the sidewalks, pavements, streets and parts of streets within the limits of the city, making full or partial improvement thereof." ( § 1, Art. 6, charter.)   If this section stood alone it might warrant the assumption claimed, but the subsequent provisions of the charter point out the mode in which the power is to be exercised, which, under all rules of construction in such cases, becomes the measure of the power conferred.

Section 2, same article of the charter, provides as follows:   "When any improvements mentioned in the preceding section are to be made, the common council shall cause the recorder to give notice of the same by publishing a notice for fifteen days previous to the undertaking of such improvement," etc.   "Such notice must specify with convenient certainty the street or part of street proposed to be improved, or of which the grades proposed to be established or altered, and the kind of improvement to be made."

Section 3, same article, provides, that "within ten days from the final publication of such notice, the owners of a majority of the property adjacent to such street, or part thereof, as the case may be, may make and file with the recorder a written remonstrance against the proposed improvement, grade or alteration thereof, and thereupon the same shall not then be further proceeded with or made."

Section 4, same article, provides, that "if no such remonstrance as provided for in the preceding section be made, the council, at its earliest convenience, within six months from the final publication of the notice mentioned in section 2 of this article, may establish the proposed grade or alteration thereof, or commence to make the proposed improvement as herein provided."

These several sections of the charter, taken together, show, to my mind, beyond any doubt, that the common

council of the city has no authority to improve any of the streets thereof, or to establish or alter the grade of any street, without causing the notice to be published as provided in said section 2, and then the proposed improvement of a street, or establishment or alteration of the grade of a street, may be defeated by remonstrance as provided in said section 3. The claim by the majority of members of the court, that publishing the notice and complying with the other conditions of the charter is only necessary where the cost of the improvement is made chargeable upon the property adjacent to the street, cannot be maintained. There is no language in the charter which warrants any such construction, nor will such a doctrine logically hold together. The requirement of publication of the notice applies the same to the proposed establishment or alteration of the grade of a street as it does to the improvement of a street, and the cost of the former is not chargeable upon adjacent property in any case.

Section 30, same article, provides in express terms, that "the cost of establishing or altering the grade of any street, or part thereof, shall be paid out of the general fund of the city." It follows, therefore, that if the improvement of a street could be made chargeable upon the general fund of the city, the publication of the required notice of the proposed improvement would be necessary in order to confer power upon the common council to undertake such improvement.

Again, section 27, same article, provides when such notice may be dispensed with. It says: "The proceedings authorized by this article for the establishment or alteration of a grade, or the improvement of a street, or a part thereof, may be taken and had without giving the notice prescribed in section 2 of this article, whenever the owner or owners of two-thirds of the adjacent property shall, in writing, petition the council therefor." When the charter declares expressly in what cases the notice need not be given, ought this court to undertake to say that the notice need not be given in any other case? It will be an unfor-

tunate period in civil affairs when the officers of a public corporation are accorded the right to bind the corporation, except in the manner specifically pointed out by law.   But the charter of the city of East Portland, I maintain, provides that the cost of the improvement of the streets within its limits, shall be made chargeable upon the adjacent property, and that no part of it can rightfully be paid out of the general fund of the city except in the establishment of the grade, and one other special instance.   Section 5, of said article 6 of the charter, provides as follows:   "In case the notice be for the improvement of a street, or part thereof, the council may proceed to ascertain and determine the probable cost of making such improvement, and assess upon each lot or part thereof liable therefor its proportionate share of such cost.   And if the council shall adjudge that any such lot, or part of lot, would not be benefited by the improvement in the full sum of the cost of making the same upon the half of the street abutting upon such lot, or part of lot, the council shall assess upon such lot, or part of lot, as its proportionate share thereof, such sum only as it shall find such lot, or part of lot, to be benefited by such improvement."

Section 18, same article, provides:   "Each lot or part thereof within the limits of a proposed street improvement shall be liable for the full costs of making the same upon the half of the street in front of and abutting upon it, and also for a proportionate share of the cost of improving the intersection of two of the streets bounding the block in which such lot or part thereof is situated, unless the council shall have determined that such lot or part thereof will not be benefited by such improvement in the full sum of such costs, in which case such lot or part thereof shall be liable for so much of said cost only as the council shall have found the same to be benefited thereby, and the further cost of making said improvement in excess of the benefits so found, shall be paid from the general fund of the city."

These two sections show unmistakably that the cost of the improvement of a street is to be borne by the adjacent

lot owners, except where the council shall determine that a lot or part thereof will not be benefited by such improvement, in the full sum of the cost of making the same upon the half of the street in front of and abutting upon it; then it shall only be liable for so much thereof as the council has determined that it was benefited by the improvement, "*and the further cost of making said improvement, in excess of the benefits so found, shall be paid from the general fund of the city.*"

It would be very remarkable, it seems to me, if the whole cost of a street improvement could be made chargeable against a general fund of the city, when the charter points out where a portion of it can be paid therefrom, and makes the lot owners liable for the payment of the entire residue. The expression of one thing in such cases is generally supposed to be the exclusion of another.

But again, section 29, same article, provides: "The common council is authorized to repair any improved street or part thereof, whenever it deems it expedient, and the cost of the same shall be paid out of the street repairing fund, such repairs to be made under the direction of the street commissioner and paid accordingly." The clear inference from this latter section is, that the common council is not authorized to *repair* an *unimproved* street. Nor has the common council authority to improve a street which has been once improved. Section 28, article 6 of the charter, is decisive upon that point. Taking these several provisions of the charter together, it is apparent that the legislature intended by the act to provide a specific mode for the improvement of the streets of the city, and to designate the class of persons who should bear the main burden of it; and having prescribed the manner in which it shall be done, no argument need be produced to prove that the common council of the city cannot pursue any other course. Nor did the common council attempt in this case to follow any other mode than that pointed out in the charter, but it failed to comply with the requirements of that instrument, and hence its efforts in that

direction were a nullity. Its acts were no more binding upon the city than upon the lot owners, whose lots abutted upon the street proposed to be improved. *Newbery* v. *Fox*, 37 Minn. 141, is a very similar case to this. There it seems from the facts disclosed in the opinion that the town council of Taylor's Falls, a municipal corporation, entered into a contract with one Fox for the grading of a street; that Fox did the work in good faith, and was told by members of the council, before he did the work, that he had a good and valid contract. But it appeared that the contract was entered into without any order having been first made requiring the owners of the real estate, or occupants of such real estate in front or adjacent to where the improvement was made, to make or cause it to be made, or opportunity given them to make it. This failure upon the part of the town council was held fatal to the contract. The court there said, Dickenson, J., that "not only was the party entering into this contract legally chargeable with notice, that by the public charter the authority of the council was thus restricted, but the allegation in the complaint that the plaintiff warned the defendant that the contract was void before he commenced to perform, is admitted by the answer. The doctrine of *ultra vires* has, with good reason, been applied with greater strictness to municipal bodies than to private corporations, and, in general, a municipality is not estopped from denying the validity of a contract made by its officers, when there has been no authority for making such contract." It was claimed upon the re-hearing that the contract attempted to be made on behalf of the city of East Portland and the parties who undertook to make the improvement, although void as to the lot owners, was good as between the city and the contractors; and the majority members of the court seem to sanction that theory   Such a view is altogether too artificial for my comprehension. How a single agreement can be valid and binding, and at the same time utterly void, is past my understanding. I am aware that different obligations may arise out of a general transaction which affect

different parties, and that some of them may bind and others not; but how a proceeding instituted by the agents of a public corporation, acting under mere statutory authority, can bind the corporation when it is irregular and void as to the parties mainly interested in the affair, and upon whom the statute casts the primary liability, I am unable to discover. I think it is a wholesome doctrine that parties who attempt to contract with such agents should be required to ascertain whether or not the agents are authorized to make the contract before proceeding to perform it. That doctrine had the approval of this court in *Springfield Milling Co.* v. *Lane County,* 5 Or. 265. The court there said: "This rule may sometimes work a hardship upon a contractor, who, without having considered whether the law has been complied with or not, has performed labor or furnished material for a public corporation, and expects compensation therefor, the same as if it had been done or furnished for a private individual. But nevertheless the authorities hold that a contractor, no less than the officers of a municipal corporation, when dealing in a matter expressly provided by law, must see to it that the law is complied with. Where work is done without authority upon the streets of a city, liability does not follow because the streets may be improved thereby or their use continued. Such continued use constitutes no such evidence of acceptance as to create a liability against the corporation." The financial condition of our cities is bad enough now, and if their officers are allowed loose rein to engage in enterprises and create obligations against them without regard to restrictions as to the mode of procedure to be pursued, irretrievable bankruptcy and ruin will certainly follow.

I think the judgment appealed from should be affirmed.