Argued 27 December, 1898; decided 16 January, 1899.

## SHIPLEY *v.* HACHENEY.

[55 Pac. 971.]

1. Liability of Municipal Corporations for Interest.—The liability of a city for interest on its debts is ordinarily the same as that of an individual.

2. Municipal Corporations—Power to Enact Ordinance.— Under a city charter empowering the council to appropriate money to pay the debts, liabilities, and expenditures of the city, and requiring the treasurer to pay interest on interest-bearing warrants, that body may enact an ordinance requiring the city treasurer, on presentation to him of a warrant for the payment of which he has no appropriate funds, to indorse it, and providing that after such indorsement it shall bear a stated rate of interest, which is not higher than the the legal rate.

3. Idem.—An authority to appropriate money for the payment of the debts of a city, considered in connection with the general power accorded to all chartered municipalities, and the implied powers accompanying the same, unless specially restricted, to enter into contracts necessary to enable them to carry out the powers conferred, is sufficient to justify an ordinance providing for the payment of interest on overdue obligations of the city: *Portland Lumbering Co.* v. *City of East Porland*, 18 Or. 21, cited.

4. Contract to Pay Interest—Subsequent Legislation.—The presentation of a warrant, and its indorsement as prescribed by an ordinance, constitute a contract between the city and the warrant holder entitling the latter to the stated rate of interest until the warrant is paid, or notice given to him of sufficient funds to pay it, which is not affected by subsequent legislation changing the rate of interest on similar demands: *Seton* v. *Hoyt*, 34 Or. 266, followed.

5. Ratification of Contract.—Portland City Charter, § 218, adopted October 22, 1898, authorizing the issuance of bonds to retire outstanding warrants against the city's general fund, which warrants it declares valid and binding obligations against the city, and requires the treasurer to pay out of the proceeds of such bonds, is a recognition and ratification of the city's obligation to pay valid outstanding warrants against the general fund, and interest thereon at eight per cent., as provided for by an ordinance passed under prior charter authority, in spite of the act of October 14, 1898 (Laws, 1898, Sp. Sess. p. 15), reducing the legal rate of interest to six per cent.

From Multnomah : Alfred F. Sears Jr., Judge.

This is a mandamus proceeding brought by W. J. Shipley against Frank Hacheney, as Treasurer of the City of Portland, to coerce the payment of eight per cent. per annum upon an interest-bearing warrant of said city, issued January 20, 1898, notwithstanding the reduction

| 34 | 303 |
| 35 | 481 |
| 34 | 303 |
| a36 | 175 |
| 36 | 176 |
| 34 | 303 |
| 43 | 312 |

of the legal rate of interest to six per cent. by the act of October 14, 1898 (Laws, 1898, Sp. Sess. p. 15). The judgment of the court below was for the plaintiff, and the defendant appeals.

Ordinance No. 8634 of said city, adopted in December, 1893, provides, among other things, that the city treasurer shall keep a record of all warrants presented to him for payment, and, if he has no appropriate funds with which to pay them, he shall indorse thereon the word "Presented," with the date thereof, and subscribe his name and office. It is further provided that all such warrants shall bear interest at the rate of eight per cent. per annum until there are sufficient funds in the hands of the treasurer with which to pay the same, and the holder is so notified.

AFFIRMED.

For respondent there was a brief and an oral argument by *Mr. Wm. A. Cleland.*

For appellant there was a brief over the names of *Joel M. Long*, City Attorney, and *Richard Williams*, with an oral argument by *Mr. Long.*

MR. CHIEF JUSTICE WOLVERTON, after stating the facts, delivered the opinion of the court.

It is urged: First, that a city, like a sovereign state or county, which is an agency of the state, is not required to pay interest unless self-imposed; and, second, that the common council was without power or authority under the charter to pass said ordinance requiring the city to pay interest at the rate of eight per cent. upon indorsed warrants. These propositions are combated by plaintiff, who urges (1) that a city is liable for the payment of interest under general law like an individual; (2) that

the council had the requisite power for the enactment of ordinance No. 8634; and, (3), as a further proposition, that by sections 218 and 219, of the new charter, which took effect October 22, 1898, the city has recognized all outstanding city warrants as valid and subsisting obligations against it, and has thereby, and by virtue of section 233, ratified said ordinance, and the acts of the officers touching the issuance and indorsement of such warrants, and hence that the interest charge of eight per cent. is still a valid claim against the city.

1. We have just decided, *Seton* v. *Hoyt*, 34 Or. 266, (43 L. R. A. 634, 55 Pac. 967), that a county, being essentially but an agency or instrumentality of the state for general governmental purposes, is subject to like rules and restrictions governing its liabilities for the payment of interest as the state, and is not within the purview of the general law regulating the rate and payment of interest upon money due, or to become due, which proposition is found to rest upon the principle that a sovereign state is not bound by the words of a statute, unless expressly named. We are of the opinion, however, that the rule does not extend to municipalities in the strict sense of that term. The state makes use of the counties, which are *quasi* corporations of its own creation, that it may the more effectually discharge its appointed duties.

"Counties are," says Mr. Dillon, "involuntary political or civil divisions of the state, created by general laws to aid in the administration of government. Their powers are not uniform in all the states, but these generally relate to the administration of justice, the support of the poor, the establishment and repair of highways. All are matters of state as distinguished from municipal concern. They are purely auxiliaries of the state; and to the general statutes of the state they owe their creation, and the statutes confer upon them all the powers

they possess, prescribe all the duties they owe, and impose all the liabilities to which they are subject. Considered with respect to the limited number of their corporate powers, the bodies above named rank low down in the scale or grade of corporate existence, and have been frequently termed *quasi* corporations. This designation distinguishes them, on the one hand, from private corporations aggregate, and, on the other, from municipal corporations proper, such as cities or towns acting under charters or incorporating statutes, and which are invested with more powers, and endowed with special functions relating to the particular or local interests of the municipality, and to this end are granted a larger measure of corporate life :" Dillon, Mun. Corp. (4 ed.), § 25. A municipal corporation proper is called into being either at the direct solicitation or by the tacit consent of the people seeking its benefit, and is mainly and primarily for their interest, advantage, and convenience. While, in a sense, it is an agency of the state to assist in the civil government of all the inhabitants, yet its chief and paramount purpose is to promote local self-government, and to regulate and administer the local or internal affairs of the city, town, or district incorporated : Dillon, Mun. Corp. §§ 19, 20, 22, 23 ; *Board of Commissioners* v. *Mighels*, 7 Ohio St. 109 ; and *Commissioners of Talbot County* v. *Commissioners of Queen Anne's County*, 50 Md. 245.

There naturally ensues, from the difference in method and purposes of creation, a distinction as it respects liabilities between a municipal corporation proper and the *quasi* corporation ; and it is well settled that the municipality is subject to a much larger range of liabilities, both of omission and commission, than a corporation of the *quasi* class : Dillon, Mun. Corp. (4 ed.), §§ 26, 966. See, also, *Esberg Cigar Co.* v. *City of Portland*, 34 Or. 282

(43 L. R. A. 435, 55 Pac. 961). So it is said, in mani-
fest harmony with this distinction, that the rule in
respect to the corporate indebtedness of the municipality
does not ordinarily differ from that which applies to
individuals: Dillon, Mun. Corp. § 506. The doctrine is
also sustained and promulgated by judicial utterances.
In *Murphy* v. *City of Omaha*, 33 Neb. 402, 408 (50 N. W.
267), it is said: "In the absence of any contract that
payment shall be delayed, the city will be liable for
interest like any other debtor. * * * In its business
transactions a city should be required to conform to the
ordinary rules, and all exemptions claimed which would
work injustice should be denied." Upon the same prin-
ciple, interest was allowed against the town in *Langdon*
v. *Town of Castleton*, 30 Vt. 285. See, also, *Pruyn* v.
*City of Milwaukee*, 18 Wis. 367; *City of Grand Rapids* v.
*Blakely*, 40 Mich. 367 (29 Am. Rep. 539); *State ex rel.* v.
*Trustees of Town of Pacific*, 61 Mo. 155; *City of Scranton*
v. *Hyde Park Gas Co.*, 102 Pa. St. 382.

2. It would seem, however, that the power of the
city council under the charter was adequate to the enact-
ment of ordinance No. 8,634, providing for the payment
of eight per cent. interest upon warrants presented and
not paid for want of funds. The rate was not above that
established by general law, and the charter provisions
empowering the city council "to appropriate money to
pay the debts and liabilities and expenditures of the
city, or any department thereof, or any item thereof,"
and requiring the treasurer, upon warrants drawing
interest, to compute and pay such interest (subd. 38,
section 36, and section 47, Charter of the City of Port-
land, as amended 1893), seem to imply that such power
was within the intendment of the legislature in the
adoption of the charter.

3. However that may be, if these provisions be con-

strued and considered in connection with the general powers accorded all chartered municipalities, and the necessarily implied power accompanying the same, unless specially restricted by charter regulations, to enter into contracts necessary to enable them to carry out the powers conferred, the authority of the council for the adoption of said ordinance is reasonably clear and ample to the purposes of its adoption : 15 Am. & Eng. Enc. Law (1 ed.), 1080 ; *Portland Lumbering Co.* v. *City of East Portland,* 18 Or. 21, 34 (6 L. R. A. 290, 22 Pac. 536).

4.   Ordinance No. 8,634, being such a one as the council had power to adopt, the presentation of the warrant, and its indorsement in obedience to the stipulations prescribed, constituted a contract between the warrant holder and the city to pay interest upon the obligation or demand at the rate of eight per cent. per annum, and the legal effect of such a contract, as we have seen in *Seton* v. *Hoyt,* 34 Or. 266 (43 L. R. A. 634, 55 Pac. 967), is that such interest shall continue until the warrant is paid, or notice given of sufficient funds with which to discharge the obligation.   Indeed, such are the very terms of the ordinance, and the case is much stronger requiring the payment of interest at the rate prevailing at the time of the indorsement of the warrant until paid, or until funds are in hand, than the case of *Seton* v. *Hoyt.* We hold, therefore, that the late act of the legislature, changing the legal rate of interest chargeable upon certain demands in said act enumerated, had not the effect to decrease the rate collectible upon the warrant in suit from the date such act became operative, but that the obligation is to pay interest at the rate prescribed by the ordinance until the city is in funds with which to meet the warrant and the holder notified thereof.

5.   There is yet another feature of the case which

impels us to this result. · The city charter was amended and took effect October 22, 1898. By section 218 the city is authorized to dispose of bonds for the declared purpose "of retiring warrants heretofore issued and now outstanding against said city, drawn upon the general fund, * * * which warrants are hereby declared to be valid and binding obligations of said city." By subsequent provisions the treasurer is required to pay such warrants out of the fund to be derived from the sale of such bonds. This we believe to be a recognition and ratification of the city's obligation to pay the outstanding warrants against the general fund, if otherwise valid demands against the city, in view of and under the conditions imposed and then prevailing, both as it relates to their issuance and the ordinances under which they were made to bear interest. The fact that Ordinance No. 8,634 was continued in force by virtue of section 233 of the new charter does not seem to affect the issues. These considerations affirm the judgment of the court below, and it is so ordered.

AFFIRMED.