Argued 2 November; decided 11 December, 1899.

## MONTEITH *v.* PARKER.

[59 Pac. 192.]

1. MUNICIPALITY—INTEREST ON WARRANTS.—The obligation of a city to pay interest on its debts being substantially the same as the obligation of an individual, its warrants will draw legal interest from the time they are presented and stamped "not paid," under Section 3587, Hill's Ann. Laws, providing the rate of interest on moneys after the same become due.

2. PAYMENT—EXCHANGE—EQUITY MAXIM.— Under the equity maxim that "equity regards the substance, not the form" the action of a city in taking back a warrant that had been before that issued and stamped "not paid," and issuing in place thereof several warrants amounting in all to the same sum, and each dated and indorsed as was the original, is not a payment of the larger warrant, but amounts to an exchange merely.

From Linn : HENRY H. HEWITT, Judge.

This is a suit by D. B. Monteith, a citizen and tax-payer of the City of Albany, to enjoin A. E. Parker, the treasurer thereof, from paying certain city warrants alleged to have been unlawfully issued. It appears that the council of said city, in pursuance of legislative authority, negotiated a sale of its bonds, and, of the sum realized therefrom, set apart, by ordinance, $45,120 for the purpose of building a bridge across the Willamette River at some point adjacent to the city. The County Court of Linn County donated the sum of $40,000 for the same purpose, and the citizens of Linn and Benton counties subscribed various sums in aid thereof, of which there was collected about $3,300, so that the amount available for constructing said bridge was $88,420. The council expended the sum of $2,780 for right of way, preparing plans, negotiating the sale of bonds, attorney fees, and surveys, and thereupon entered into a contract with the defendant, the Portland Building & Bridge Company, a corporation, under which the latter, in consideration of the sum of $90,566.30, constructed a steel cantilever bridge across said river, and completed the approaches thereto, in accordance with the plans and specifications agreed upon. The city recorder, pursuant to resolutions of the council, drew warrants on the treasurer in favor of said bridge company from time to time as the work progressed, and upon the completion of the bridge, on July 2, 1892, drew a warrant for $884.30, which evidenced the final payment. These warrants were paid out of the bridge fund until it was exhausted, after which they were, upon presentation, indorsed by the treasurer, "Not paid for want of funds." Of the warrants so issued the following are involved in this suit: Warrant No. 100, for $3,189.68, dated March 9, 1892; five warrants, for $1,000 each, issued in lieu of No. 200, for $5,000, April 27, 1892; and No. 335, for $884.30, July

2, 1892. After warrant No. 200 had been so indorsed by the treasurer, the recorder, upon the request of the mayor and two councilmen, but without any ordinance or resolution of the council authorizing it, wrote upon the face thereof, ''This warrant to bear interest at the rate of eight per cent. per annum.'' Warrant No. 335 contained a similar recital. The recorder, on September 14, 1894, in pursuance of a resolution adopted by the council, issued, in lieu of warrant No. 200, five warrants, of $1,000 each, in favor of said bridge company, dated and indorsed as the original, and bearing interest at the rate of eight per cent. per annum from April 27, 1892, and delivered them to the payee upon the surrender of the original warrant. The illegality chiefly relied upon for the relief sought lies in the fact that the City of Albany, at the time the warrants involved in this suit were issued, had, in contravention of Chapter IV, § 34, subd. 52, of its charter (Laws, 1891, p. 699), incurred an indebtedness of more than $5,000. The Portland Building & Bridge Company, having in its answer denied the material allegations of the complaint, averred that prior to the commencement of the suit it had, for a valuable consideration, assigned said warrants to the King Bridge Company, a private corporation, whereupon the latter, upon petition of intervention, was permitted to become a party, and, having denied the material allegations of the complaint, set up the facts hereinbefore stated, from which it claimed that said warrants were valid debts against the city. Replies to the allegations of new matter contained in the several answers having been filed, a trial was had, and the court found, in effect, that, notwithstanding said warrants were issued in violation of the provisions of the Charter of the City of Albany, a subsequent act of the legislative assembly authorizing the issue of bonds of said city in the sum of $20,000 to pay its floating indebtedness (Chapter

IV, § 52, Amended Charter of Albany, Laws, 1895, p. 392), in which were included said warrants, had validated them, but perpetually enjoined the treasurer from paying any interest thereon; and from so much of the decree rendered upon said findings as relates to the payment of interest, the defendants, the Portland Building & Bridge Company and the King Bridge Company, appeal.

Reversed.

For appellants there was a brief over the names of *Cox, Cotton, Teal & Minor*, and *Joel M. Long*, with an oral argument by *Mr. Wirt Minor*.

For respondent there was a brief over the name of *Weatherford & Wyatt*, with an oral argument by *Mr. Jas. K. Weatherford*.

Mr. Justice Moore, after stating the facts, delivered the opinion of the court.

The charter of the City of Albany contains the following provision : "The City of Albany shall not be bound by any contract, or in any way liable thereon, unless the same is authorized by ordinance," etc. : Chapter XI, § 137, Charter of Albany (Laws, 1891, p. 720). At the time the warrants in question were issued, Section 4 of Ordinance No. 161 of said city was in force, and provided that "When any city warrant shall be presented to the city treasurer, and there is no money in the treasury to pay the same, the treasurer shall indorse on the back of said warrant, 'Presented and not paid for want of funds,' also the time of making such indorsement ; and he shall keep a record of such orders or warrants, in a book kept for that purpose ; whenever the city treasurer shall pay any such warrant so indorsed he shall cancel the same, as other warrants are canceled by him, and enter the

same in the book of indorsed orders." If it be conceded that no authority existed for writing on the face of the warrants the clause to the effect that they should bear interest, yet, each warrant having been presented to the city treasurer, and indorsed by him, "Not paid for want of funds," the question is presented whether this indorsement rendered them interest-bearing at the legal rate prescribed by statute. The statute regulating the rate of interest, which was in force when these warrants were indorsed, provided "That the rate of interest in this state shall be eight per centum per annum and no more on all moneys after the same become due:" Hill's Ann. Laws, § 3587. The state treasurer is required, if there are no funds on hand with which to pay state warrants, to indorse thereon, "Not paid for want of funds," together with the date, and all warrants so indorsed shall draw legal interest from such indorsement: Hill's Ann. Laws, § 2219, subd. 3. If there be no funds with which to pay county orders, the county treasurer is required to make the same indorsement upon them when presented to him, and such indorsement entitles them to draw legal interest until notice is given that there are funds for their redemption: Hill's Ann. Laws, § 2465; Laws, 1893, p. 59.

1. It is contended by plaintiff's counsel that a municipality is invested by the legislative assembly with delegated power, in the exercise of which it becomes a sovereign in a degree similar to that of the state or of a county, and that, inasmuch as the statute contains no provision regulating the payment of interest upon city warrants, the city is not liable therefor, unless made so by its ordinance providing for the payment thereof, and that the indorsement of a city treasurer upon such warrant to the effect that it was not paid for want of funds is ineffectual to make it interest-bearing. The state, by reason of its sovereignty, cannot be compelled to pay in-

terest on its debts after they become due, without its consent, evidenced by an act of its legislative assembly, or by lawful contract of its executing officers : *United States* v. *North Carolina*, 136 U. S. 211 (10 Sup. Ct. 920): *Carr* v. *State ex rel.* 127 Ind. 204 (26 N. E. 778, 11 L. R. A. 370, 22 Am. St. Rep. 624). So, too, a county, which is an instrumentality of the state, and organized to promote the general welfare, exercises a degree of sovereign power which renders it exempt from the payment of interest upon its matured debts, unless by its agreement or by legislative enactment the duty of paying interest is imposed upon it : *Seton* v. *Hoyt*, 34 Or. 266 (43 L. R. A. 634, 55 Pac. 967). The legislative assembly, recognizing the existence of this legal principle, has furnished the creditor a method by which he may secure from the state or from a county a recognition of the maturity of its obligation, and an admission of its liability to pay interest thereon. The fact that the legislative assembly has not prescribed a method by which a creditor may compel a city to pay interest on its matured obligation is a circumstance tending to show that a municipal corporation was considered by the lawmaking body as a private person, and subject to the provisions of the statute regulating the payment of interest by natural persons. Notwithstanding a municipal corporation has delegated to it certain powers of government, it is to be regarded as a private person with respect to its contracts, which are to be construed in the same manner and with like effect as those of natural persons : *Touchard* v. *Touchard*, 5 Cal. 306 ; *Argenti* v. *City of San Francisco*, 16 Cal. 255. The rule announced in those cases was practically affirmed in this court in the case of *Shipley* v. *Hacheney*, 34 Or. 303 (55 Pac. 971), in which it was held that the liability of a city for interest on its debts does not materially differ from that of an individual. The reason for the distinction

that a municipal corporation is subjected to burdens and exposed to liabilities not imposed upon a county is found in the fact that it is endowed by the legislative assembly with greater power. A county, as a division of the state, may impose taxes upon the property of its citizens, provided they are equal and uniform. A city, in addition to exercising the same power, may make local improvements, and assess the cost thereof upon the property specially benefited thereby, which a county is not empowered to do. Many similar instances could readily be cited, showing the superior power delegated to a city, but the one given is sufficient. This grant of additional power to a city carries with it corresponding obligations, among which is a liability upon its contracts to the same extent as is imposed by law upon private persons : Dillon, Mun. Corp. (4 ed.) §§ 26, 966. "The rule in respect to interest on debts against municipal corporations does not ordinarily differ from that which applies to individuals :" Dillon, Mun. Corp. (4 ed.) § 506. In addition to the cases cited by Mr. Chief Justice Wolverton, in *Shipley* v. *Hacheney*, 34 Or. 303 (55 Pac. 971), as illustrative of this legal principle, see *Seymour* v. *City of Spokane*, 6 Wash. 362 (33 Pac. 832).

The contracts of a municipality being treated as those of a natural person brings the obligation of a city for the payment of money within the general provisions of the statute rendering such evidence of debt interest-bearing after the same become due : Hill's Ann. Laws, § 3587. Whatever the rule may have been at common law with respect to the payment of interest, commercial transactions between private persons have so multiplied in modern times that a promise to pay interest is necessarily implied from the inability, failure, or neglect of a debtor to pay money when it becomes due (*Thorndike* v. *United States*, 2 Mason, 1, Fed. Cas. No. 13,987) ; and our stat-

ute, operating upon such promise, enforces it in favor of a creditor. When a warrant is issued for the unconditional payment of money by a city, the municipal corporation is not bound, like a private person, to seek its creditor, to make payment of its indebtedness; the law implying from the issue of the warrant that it is payable upon demand at its treasury: *City of Pekin* v. *Reynolds*, 31 Ill. 529 (83 Am. Dec. 244). This imposes upon the creditor holding the warrant the duty of making a demand upon the city treasurer for its payment, thereby fixing the maturity of the debt, and, if not paid for want of funds, putting the city in default: *Sibley* v. *Pine County*, 31 Minn. 201 (17 N. W. 337). And the treasurer's indorsement of this fact upon the warrant, in pursuance of an ordinance authorizing it, affords the evidence that it bears interest from the date of such indorsement: *People* v. *Canal Com'rs*, 5 Denio, 401; *State ex rel.* v. *Trustees of Town of Pacific*, 61 Mo. 155; *Town of Poultney* v. *Town of Wells*, 1 Aiken, *180. The warrants involved in this suit were presented to the treasurer at the time they were issued, and indorsed by him, "Not paid for want of funds." This, as we have seen, made them interest-bearing from that date.

2. The warrant for $5,000, it will be remembered, was surrendered, and five others, of $1,000 each, were issued in lieu thereof, and dated and indorsed as the original. "Equity regards the substance and intent, not the form:" 11 Am. & Eng. Enc. Law (2 ed.), 184. This maxim is as applicable at the present time as it was when it was first formulated. Invoking it here, we conclude that the issue of the latter warrants was not a payment, but an exchange for the original, including the principal and interest due thereon. It follows from the foregoing that the warrants in question bear interest from the date of

36 OR.—12.

their indorsement, and the court erred in enjoining the payment of such interest.   The part of the decree appealed from is therefore reversed, and the injunction dissolved;   the appellants to recover their costs in this court and in the court below.                         REVERSED.